**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Lewis Edward JENNINGS, Defendant-Appellant.**

**No. 72–1480.**

United States Court of Appeals,
Ninth Circuit.

Oct. 4, 1972.

Larry L. Debus (argued), of Debus & Busby, Phoenix, Ariz., for defendant-appellant.

Ann Bowen, Asst. U. S. Atty. (argued), Patricia A. Whitehead, David S. Hoffman, Asst. U. S. Attys., William C. Smitherman, U. S. Atty., Tucson, Ariz., for plaintiff-appellee.

Before BARNES and BROWNING, Circuit Judges, and WOLLENBERG, District Judge.*

WOLLENBERG, District Judge.

Appellant was found guilty after court trial of unlawfully possessing marijuana in violation of 21 U.S.C. § 844(a). He appeals from the judgment and sentence entered upon the verdict of guilty. We reverse.

Although three questions are presented for appellate review, only one is determinative of the merits of the appeal. This question is whether probable cause existed to arrest or detain appellant making fingerprints and other evidence taken from him admissible at the trial.

The sole facts before the court are those derived from testimony given before the trial judge on the Motion to Suppress Evidence. He ruled probable cause to arrest existed; we disagree.

On July 4, 1971, special agent Sheppard was cruising in a patrol car in Nogales, Arizona, listening to the Nogales police frequency on his radio. Shortly after midnight he heard that Nogales police officers, responding to a call on Van Buren Street, had seen parties in flight and that one of the officers had found marijuana. As Sheppard headed toward the Van Buren area he saw the defendant-appellant walking near an intersection about two and one-half blocks from the house where marijuana had been found.[1] Appellant was wearing heavy clothing, had very long dark hair and was described by police as a "hippy" type. (R.T. 37)

---

* Honorable Albert C. Wollenberg, U. S. District Judge, Northern District of California, San Francisco, California, sitting by designation.

1. Testimony before the lower court was to the effect that this was a high smuggling area known as Smuggler's Gulch. The Herrera house was some two miles from the Mexican border. The entire area is desolate (R.T. 33). This area was previously before the court in United States v. Sherman, 430 F.2d 1402, 1404 (9th Cir. 1970).

Sheppard stopped his car to talk with appellant, who complied with a request for identification by producing a driver's license and a social security card. Sheppard then queried him about his destination. Appellant replied he was going home. Pressed for more information, he stated that he was attending school in Tucson and lived in Phoenix. While Sheppard was conversing with appellant, he shined his light at appellant's feet and noted that the pant legs were wet from half-way below the knee, that his boots were wet and had a collection of mud, grass and weeds on them. He then asked appellant where he was coming from. The answer was that he had come from the airport where he had been in a car with a girl, (whose name he later admitted he did not know). He said they had fought and she had kicked him out of her car. He was now walking back to the Coronado Motel. When Sheppard pointed out to appellant that he was walking in the opposite direction, he explained that he was new to the area and was going around to reach the main highway.

Several minutes after Sheppard had stopped appellant to question him, two other agents, Wales and Strand, who had heard the same Nogales police broadcast arrived to join Sheppard and appellant. They overheard the latter part of appellant's conversation with Sheppard. Wales patted appellant down. As he ran his hands over appellant's back, he felt two heavy perspiration areas streaking down from the shoulders, although the center of the back was dry. The moistness was readily apparent to the touch, but could not be seen in the streetlight. There was more talk, somewhat repetitious of appellant's earlier conversation with Sheppard. As Wales was departing to go and pick up the marijuana, he instructed Sheppard to take appellant to the Sheriff's office for identification.

Sheppard testified that he did not have any specific reason to believe appellant was connected with the marijuana when appellant was taken to the Sheriff's office. (R.T. 45) None of the government agents had any fear for their safety during appellant's conversations with them. (R.T. 48) Furthermore, when Wales felt the moist areas on appellant's back, he did not know that the marijuana was in a back pack; nor was he aware of this fact when he ordered Sheppard to drive appellant to the Sheriff's office. (R.T. 69–70)

The Sheriff's office was a five minute ride from the point where appellant was found. On arrival, Sheppard spent another five to ten minutes photographing and fingerprinting appellant. By that time, Wales had arrived at the office. He presented appellant with an arrest report form, even though appellant was never formally told that he was under arrest. After advising appellant of his rights against self-incrimination and his right to have an attorney, Wales filled out the form for identification purposes. This required about fifteen minutes. Wales mentioned to appellant that marijuana had been found and that the wrappers from the packages would be sent to the FBI to be checked for fingerprints as well as compared with his. Appellant was then released.

The fingerprints on the marijuana wrappers were subsequently attributed to appellant. He was indicted. A Motion to Suppress the fingerprints was denied. He was brought to trial and convicted.

Some confusion exists as to the legal basis on which appellant was detained for the purpose of being fingerprinted. The trial judge proceeded upon the theory that the government agents had probable cause to arrest appellant. (R.T. 86–87) Appellant has accepted the trial court's theory and premised his argument on the proposition that no probable cause existed to arrest him. (Op.Br. 12; Rep.Br. 5) Appellee's argument, however, is premised on the theory that only probable cause to detain for investigation—something less than probable cause to arrest—need be shown. This court need not decide which is the correct theory because we have concluded that probable cause was lacking for either an ar-

rest or a prolonged investigatory detention.[2]

■■■■■ Turning first to the existence of probable cause to arrest appellant, the orthodox formula is that probable cause exists when the arresting officer has facts within his knowledge based on trustworthy information which would warrant a prudent man to believe that an offense has been committed, and that the suspect committed it.[3] At the termination of the suppression hearing, the trial judge ruled that there was probable cause to arrest appellant because he was found late at night in an area well known for smuggling and seldom frequented by "Anglo" pedestrians unless they were involved in illicit activity, especially if they had long hair or beards and a hippy appearance. (R.T. 84–87) Appellee has sought to buttress the trial court's ruling on probable cause by stressing a combination of suspicious circumstances: appellant was in a notorious smuggling center close to the Mexican border; marijuana was found only two and one-half blocks away about forty minutes before appellant was stopped; two persons were seen running from the area where marijuana was found; appellant was not a resident of the area; his clothes were wet and his boots were muddy; and perspiration marks were felt along the shoulder strap area of his back.

Although this is a lengthy list of circumstances, both the trial court and appellee fail to recognize that the agents lacked knowledge of some of the more salient bits of information. None of the agents had any description of the persons seen near the marijuana. Nor, at the time of questioning the appellant on the street did any agent know that the marijuana packages had been carried in a back pack.

Sheppard admitted at the suppression hearing that he had no knowledge of facts which specifically linked appellant to the crime when he drove him to the Sheriff's office for identification. Indeed, during the entire period of their street conversations with appellant, it does not appear that any agent had knowledge that appellant had done anything to indicate he was engaged in a criminal enterprise except possibly his presence in the general area. But presence is not enough to conclude a person is enmeshed in criminal activity. See United States v. DiRe, 332 U.S. 581, 587, 68 S.Ct. 222, 92 L.Ed. 210 (1948). Moreover, appellant was not running; he was walking. Cf. United States v. Hines, 455 F.2d 1317, 1325 (D.C.1972).

Appellee also stresses appellant's personal appearance, and relies on United States v. Sherman, 430 F.2d 1402 (9th Cir. 1970). That case is readily distinguishable, for the parties there had been under prolonged surveillance. Although their personal appearance caused the police to put them under surveillance, prob-

---

2. As to whether an arrest occurred in this case, see cases with similar fact situations collected in United States v. Tramontana, 460 F.2d 464, 466, fn. 1 (2nd Cir. 1972).

3. Essentially, this means that the officer had reasonable grounds. Limits do exist: mere suspicion or the good faith of the arresting officer are not enough to sustain the showing of probable cause. E. g., Henry v. United States, 361 U.S. 98, 101–102, 80 S.Ct. 168, 4 L.Ed.2d 134 (1959). A suspicion must ripen into a judgment that a crime was probably committed. See Spinelli v. United States, 393 U.S. 410, 418, 89 S.Ct. 584, 21 L.Ed. 2d 637 (1969). Moreover, all facts known to the officer at the time of making the arrest must be considered by a court measuring his conduct. Beck v. Ohio, 379 U.S. 89, 91, 85 S.Ct. 223, 13 L.Ed.2d 142 (1964). Whatever inferences may be drawn by the arresting officer must also be reasonable. See Rodgers v. United States, 267 F.2d 79, 87 (9th Cir. 1959). Lastly, the prosecution has the burden of showing that probable cause existed. United States v. Cleaver, 402 F.2d 148, 151 (9th Cir. 1968). The genesis of current probable cause doctrine is Carroll v. United States, 267 U.S. 132, 161, 45 S.Ct. 280, 69 L.Ed. 543 (1925), which is elaborated upon in Brinegar v. United States, 338 U.S. 160, 175–176, 69 S.Ct. 1302, 93 L.Ed. 1879 (1949) and most recently reaffirmed in Adams v. Williams, 407 U.S. 143, 92 S. Ct. 1921, 1924, 32 L.Ed.2d 612 (1972).

able cause arose as a result of later circumstances.

Having rejected the trial court's determination that probable cause to arrest existed, we now consider appellee's contention that the agents were entitled to stop appellant for investigatory detention and that appellant's fingerprints and statements made at the Sheriff's office are thus admissible. Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968) is appellee's prime authority. *Terry,* however, is a case of narrow application: it authorizes police officers briefly to detain persons on the street for inquiry and observation and to conduct a patdown search for weapons when the circumstances give rise to a rational suspicion of criminal activity.[4]

We think that Sheppard's detention of appellant on the street was constitutionally valid at its inception, for the reasons urged upon the court on the issue of probable cause to arrest. This court has consistently upheld an officer's detention of a person for limited investigative inquiry if there is a well founded suspicion that some criminal enterprise was afoot. E. g., Wilson v. Porter, 361 F.2d 412 (9th Cir. 1966); United States v. Brown, 436 F.2d 702 (9th Cir. 1970); and see especially United States v. Davis, 459 F.2d 458, fn. 3 (9th Cir. 1972).

The prolonged and subsequent detention at the Sheriff's office which followed, however, was not valid. Appellant fully cooperated with the agents. He identified himself satisfactorily, answered questions about himself and his activities which could not be disproved by the agents at the time, and he allowed himself to be patted down. Hence, he complied with the Supreme Court mandate by enabling the agents "to maintain the status quo momentarily". When the questioning on the street ended, the need for immediate police work was fulfilled and no further preventive action could be accomplished.

Appellee points out that the Supreme Court in Davis v. Mississippi, 394 U.S. 721, 727–728, 89 S.Ct. 1394, 22 L.Ed.2d 676 (1969), intimated that a detention for fingerprinting, which lacked probable cause for arrest, might be found to comply with the Fourth Amendment under certain narrowly defined circumstances, presumably with judicial authorization. It is contended that appellant's detention at the Sheriff's office is constitutionally sufficient within *Davis.* The language in *Davis* was, however, dicta.

This Court is not inclined to adopt on its own initiative, the suggestion that probable cause to arrest need not exist to impose burdens substantially like those of arrest—transportation to the police station, fingerprinting, photographing and completion of a lengthy arrest form. (See Preliminary Draft of Proposed Rule 41.1 of the Fed.Rules Crim.Proc., 52 F.R. D. 409, 462–467 [1971]).

Consequently we hold that appellee's continued detention of appellant for the purpose of fingerprinting and photographing was constitutionally invalid. The fingerprints were inadmissible. Davis v. Mississippi, supra.

The judgment is reversed and the cause remanded to the District Court with direction to dismiss the action.

---

4. *Terry* has recently been reaffirmed by the Supreme Court. In Adams v. Williams, 407 U.S. 143, 92 S.Ct. 1921, 1923, 32 L.Ed.2d 612 (1972), the court said:
  "The Fourth Amendment does not require a policeman who lacks the precise level of information necessary for probable cause to arrest to simply shrug his shoulders and allow a crime to occur or a criminal to escape. On the contrary, *Terry* recognizes that it may be the essence of good police work to adopt an intermediate response. See *id.,* 392 U.S. at 23, 88 S.Ct. at 1881. A brief stop of a suspicious individual, in order to determine his identity or to maintain the status quo momentarily while obtaining more information, may be most reasonable in light of the facts known to the officer at the time . . " The Court cites Gaines v. Craven, 448 F.2d 1236 (9th Cir. 1971).