**UNITED STATES of America,
Appellee,**

v.

**Frederick M. MICHELI, Defendant-
Appellant.**

**No. 73–1186.**

United States Court of Appeals,
First Circuit.

Argued Sept 11, 1973.

Decided Nov. 15, 1973.

James V. McManus, Boston, Mass., for appellant.

Robert B. Collings, Asst. U. S. Atty., with whom James N. Gabriel, U. S. Atty., and Richard E. Bachman, Asst. U. S. Atty., Chief, Crim. Div., were on brief, for appellee.

Before COFFIN, Chief Judge, and McENTEE ⋅ and CAMPBELL, Circuit Judges.

COFFIN, Chief Judge.

Appellant, convicted of possessing and concealing counterfeit United States Federal Reserve notes with intent to defraud, 18 U.S.C. § 472, claims that an otherwise valid warrant to search the premises of his office did not include within its scope a search of his briefcase. While appellant also contends that the search warrant did not permit government agents to forcibly detain him, and that the restraint thereby imposed upon him prior to his actual arrest invalidated the warrant, we find these latter claims clearly frivolous. The only substantive issue presented on appeal is: to what extent do personal effects lie outside the scope of a warrant to search the premises?

On June 12, 1972, after weeks of investigation and surveillance by the United States Secret Service, a search warrant was issued for the office of the Hillside Press, authorizing a search of "those rooms of the second floor of those premises known as 81 Canal Street, Boston, being used as the place of business of the Hillside Press . . . ." At the same time an arrest warrant was issued for appellant's brother who, with the appellant, was co-owner of the Press. That evening, government agents surrounded the premises, and observed the appellant enter the building, carrying a brown leather briefcase. Approximately one half hour later, at 6:20 p. m., the agents entered the building, arrested appellant's brother, and proceeded to search the premises. Appellant was frisked and led into a back room. In their search of the front room, the agents discovered what they knew to be appellant's briefcase on the floor under a desk. Inside the briefcase they found what proved to be forty-three counterfeit five dollar Federal Reserve notes, and papers identifying appellant as the owner of the briefcase.

The appellant filed a motion to suppress as evidence the contents of the briefcase, in accordance with Rule 41(e), F.R.Cr.P., on grounds, *inter alia*, that the agents knew that the briefcase was the personal property of the appellant and therefore its search did not come within the scope of the warrant to search the premises of the Press. The district court denied appellant's motion, and the contents of the briefcase were subsequently entered into evidence against the appellant at his trial.

We affirm the decision of the district court. In so doing, we do not mean to suggest that anything found on the premises would necessarily fall within the scope of a warrant to search premises. Nor would we imply that the result would be different if, when the officers entered, appellant was physically holding the briefcase. To allow our decision to be interpreted as giving carte blanche to seize any objects reposing within premises covered by a warrant would be a disservice to law enforcement officials, individuals who may find their personal privacy invaded by a premises

search warrant, and courts which must rule on suppression motions. Without attempting to write in black letters, we think some confusion may be spared by setting forth our rationale in deciding this case.

Had appellant been a doctor on call at the Press and had the agents reason to know that the briefcase belonged to him, we would not reach the result we do here. We are not helped, in distinguishing these two situations, by the general proposition that a warrant to search premises does not permit a personal search of one who merely happens to be present at the time.[1] For the question is: what is a personal search? A search of clothing currently worn is plainly within the ambit of a personal search and outside the scope of a warrant to search the premises. But a personal effect such as a briefcase, carried on to the premises and then tucked under a desk, does not clearly fall either within the realm of a personal search or a search of the premises. While the articulation of guilding principle may result in a line drawn with a stub of chalk rather than with a draftsman's pen, we nevertheless think principle exists.

Some courts approach the quest for principle by immunizing from a search under sanction of a premises warrant any item within the physical possession of an individual on the premises. *See* United States v. Teller, 397 F.2d 494 (7th Cir. 1968), cert. denied, 393 U.S. 937, 89 S.Ct. 299, 21 L.Ed.2d 273 (1968). This has the virtue of precision but suffers from being at once too broad and too narrow. It is too broad in that a search warrant could be frustrated to the extent that there are hands inside the premises to pick up objects before the door is opened by the police. This obvious loophole has led at least one court to bar such frustration by extending permissible search to objects held in hand, *see* Walker v. United States, 117 U.S.App.D.C. 151, 327 F.2d 597, 600 (1963), cert. denied, 377 U.S. 956, 84 S.Ct. 1635, 12 L.Ed.2d 500 (1964)—a rule which preserves the efficacy of a warrant by obliterating the distinction between a search of premises and a search of the person.

A focus on actual physical possession is too narrow, however, in that it would leave vulnerable many personal effects, such as wallets, purses, cases, or overcoats, which are often set down upon chairs or counters, hung on racks, or checked for convenient storage. The Fourth Amendment's basic interest in protecting privacy, Warden v. Hayden, 387 U.S. 294, 87 S.Ct. 1642, 18 L.Ed.2d 782 (1967), and avoiding unreasonable governmental intrusions, Mancusi v. Deforte, 392 U.S. 364, 88 S.Ct. 2120, 20 L.Ed.2d 1154 (1968), is hardly furthered by making its applicability hinge upon whether the individual happens to be holding or wearing his personal belongings after he chances into a place where a search is underway. The rudest of governmental intrusions into someone's private domain may occur by way of a search of a personal belonging which had been entrusted to a nearby hook or shelf. The practical result of such a rule may be to encourage the government to obtain search warrants for places frequented by suspicious individuals, such as infamous bars, then lie in wait for those individuals to enter and make themselves comfortable.

In determining to what extent a recognizable personal effect not currently worn, but apparently temporarily put down, such as a briefcase, falls outside the scope of a warrant to search the premises, we would be better advised to examine the relationship between the person and the place. The purpose of a search warrant is to assure that any governmental intrusion is justified by a

---

1. *See, e. g.*, United States v. Di Re, 332 U.S. 581, 68 S.Ct. 222, 92 L.Ed. 210 (1948); United States v. Haywood, 284 F.Supp. 245 (E.D.La.1968); *see also* State v. Bradbury, 109 N.H. 105, 243 A.2d 302 (1968); *cf.* United States v. Jennings, 468 F.2d 111 (9th Cir. 1972); United States v. Festa, 192 F. Supp. 160, 163 (D.Mass.1960).

careful prior determination of probable cause and necessity. Furthermore, any searches which are deemed necessary should be as limited as possible. Coolidge v. New Hampshire, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971). This further objective is achieved by requiring that the warrant contain a particular description of the things to be seized and give a clear idea of the scope of things to be searched. It should not be assumed that whatever is found on the premises described in the warrant necessarily falls within the proper scope of the search; rather, it is necessary to examine why a person's belongings happen to be on the premises. "[T]he Fourth Amendment protects people, not places", Katz v. United States, 389 U.S. 347, 352, 88 S.Ct. 507, 511, 19 L.Ed.2d 576 (1967), and the protective boundary established by requiring a search warrant should encompass those extensions of a person which he reasonably seeks to preserve as private, regardless of where he may be.

■ Polar cases easily come to mind. A warrant to search a private home or office for specific objects might reasonably comprehend within its scope household items, containers, and personal accessories belonging to the owner of the premises. United States v. Teller, *supra*. But the same objects might not fall within the reasonable scope of a warrant to search a more public place, such as a meeting hall, a restaurant, or a barbershop, *see* Commonwealth v. Snow, Mass., 298 N.E.2d 804, 812 (1973) (Kaplan, J., dissenting in part), where the individual who owns the objects is a transient visitor or customer. A visitor in a private home stands in a different position from an habitué of a "shooting gallery", United States v. Johnson, 154 U.S.App.D.C. 393, 475 F.2d 977, 980 (1973) (Bazelon, C. J., dissenting in part). Between the extremities, no crisp formula can substitute for reasonable judgments.[2] That the problem of distinguishing premises from person has yielded so few decided cases indicates that the problem we are discussing is a narrow one, falling between two primary rules, one permitting searches of premises, the other prohibiting searches of person. In this interstitial area where the literal application of either primary rule would frustrate the legitimate interests of either the police or the individual, we think it more consistent with the Fourth Amendment that searches of the personal effects of visitors to premises be appraised by reference to the reasonable expectations of privacy which visitors bring to premises rather than by attributing significance to a literal coup de main.

■ Our basic rationale for deciding that appellant's briefcase fell within the scope of the warrant to search the premises does not, therefore, rest upon the fact that at the time of the search his briefcase was out of his physical possession. Rather, we base our decision on the fact that, as co-owner of the Hillside Press, appellant was not in the position of a mere visitor or passerby who suddenly found his belongings vulnerable to a search of the premises. He had a special relation to the place, which meant that it could reasonably be expected that some of his personal belongings would be there. Thus, the showing of probable cause and necessity which was required prior to the initial intrusion into his office reasonably comprehended within its scope those personal articles, such as his briefcase, which might be lying about the office. The search of the briefcase, under these circumstances, was properly carried out within the scope of the warrant.

Affirmed.

LEVIN H. CAMPBELL, Circuit Judge (concurring).

I am unable to accept the broad ruling suggested by the court—that the police, although armed with a warrant, may

---

2. A different situation exists when a personal effect is so secreted that police could reasonably assume that the visitor did not harbor a normal expectation of privacy but, indeed, took extraordinary measures to insure that the effect would be hidden from view.

search an individual's personal effects found on premises only if they know at the time of a close relationship between the person and the premises.

The rule eviscerates the authority conferred by a valid warrant to search premises. To obtain such a warrant, officers must show probable cause to search the premises for described evidence or contraband. That showing, I believe, justifies whatever intrusion may result from searching all articles found on the premises having characteristics making it possible for them to harbor the matter described in the warrant. There is an exception, it is true; such a warrant does not ordinarily sanction a search of persons found on the premises. That exception results from recognition that a personal search may involve a peculiarly obnoxious physical intrusion and molestation. Only rarely—as, perhaps, when necessary to avoid the removal or destruction of articles suddenly seized by a suspect in view of the officers— might we permit a search of the body on the mere authority of a warrant to search premises.[1]

The court unnecessarily enlarges the personal search exception when it grants possible sanctuary to all manner of arguably intimate personal effects carried upon the premises and then set down.

A search of such objects is neither more nor less intrusive than would be the search of similar objects whose owner, having deposited them, had left the premises before the police arrived. Any search is an invasion of privacy; but I think the cause for issuance of the original warrant allows a search of relevant personal effects not in the possession of their owner as well as of all other relevant objects on the premises. The contraband or incriminating evidence covered by the warrant is as likely to be within briefcases or bags just brought on the premises as within other objects on the premises.[2] It is true that if the officer knows the owner of the briefcase has no "relationship" to the premises, he might have less reason to search. But in many cases the police would have no way of knowing, in advance, what is the individual's actual connection with the premises. When the stranger in the betting parlor solemnly announces that he is the family doctor, I am less sure than is the court that I would require police to believe him—or inquire further before searching his bag.

In the present case the agents had a warrant permitting the suspect premises to be searched for "counterfeit Federal Reserve Notes, materials" and related equipment. A briefcase lying on these premises, whenever and by whomsoever brought, was an obvious likely hiding place for counterfeit notes. Here, as it happened, the agents knew that the owner of the briefcase was closely involved with activities on the premises. But I do not think that their right to execute the warrant should so fortuitously turn on what they happened to know or think at the time. Given the probable association of couriers, purchasers, bagmen and other accomplices with the counterfeiting scheme, the briefcase was a suspicious object and, therefore, would have merited search had its purported owner been a total stranger to the agents, or had he introduced himself as an itinerant peddler, a salesman, a lost out-of-towner, or even a minister or priest. Had the agents known less about Micheli, I cannot for a moment believe that they would constitutionally have been required to grant sanctuary to Micheli's briefcase, found, as it was, on premises

---

1. I leave to another day, and to the fact-pattern of that case, whether a brief case or wallet held in hand can be searched. *Cf.* Walker v. United States, 117 U.S.App.D.C. 151, 327 F.2d 597 (1963), cert. denied 377 U.S. 956, 84 S.Ct. 1635, 12 L.Ed.2d 500 (1964).

2. This may not, of course, be always so, as where the object of the search is a sub-machine gun, and the article searched is a woman's handbag. But in such a case, the handbag is protected not because of the new rule proposed by the court but simply because the search would exceed the scope of the warrant.

covered by the warrant, and relevant to the purposes of the warrant.

Sometimes the police may know in advance that X is a bagman; sometimes they may not. But when, in execution of a warrant, they find X's bag on a table within a room where there was probable cause to suspect a criminal scheme was taking place, I can see no reason for immunizing the bag.

The test proposed by the court is, moreover, likely to prove impractical. It may make necessary a lengthy inquiry into the police officer's subjective knowledge at the time of the search. Since the nature and quantum of "relationship" cannot readily be defined, officers and courts may be bedevilled with uncertainty in a field where certainty is especially desirable. The "test may dissolve into a protracted hunt for guidelines so faint as to be unrecognizable. And it invites a host of other niceties: such as whether the police knew or should have known that the bag had recently been brought on the premises by someone; how near the bag must be to its owner before the police need inquire into the latter's "relationship" to the premises; and other refinements which I think society has no vital stake in pursuing.

The rare situation which might give us pause, e. g., the search of the restaurant customer's raincoat under authority of a warrant to search the restaurant, can be dealt with on its peculiar facts under the traditional rule that "a search which is reasonable at its inception may violate the Fourth Amendment by virtue of its intolerable intensity and scope." Terry v. Ohio, 392 U.S. 1, 18, 88 S.Ct. 1868, 1878, 20 L.Ed.2d 889 (1967). If the warrant was issued because the restaurant was suspected to be a betting parlor, a reasonable execution of the warrant might include a search of customers' raincoats (assuming the coats to be deposited on the premises, and not still on the backs of the customers). On the other hand, if the warrant is for a meat cleaver believed to have been used as a murder weapon a week earlier by the chef, a search of raincoats just deposited by customers might be intolerable. Much would depend on the facts of each case. The court can be expected to suppress evidence seized in a search which goes beyond the authority reasonably conferred by the warrant. But I think that a search warrant of the kind here in question affords authority to search all objects found on the premises of a character which might reasonably contain the articles for which a search is permitted.