**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Robert Mark McLAUGHLIN, and Paul M. Bernauer, Defendants–Appellants.**

**Nos. 87–1099, 87–1113.**

United States Court of Appeals,
Ninth Circuit.

Argued Jan. 11, 1988.

Submitted July 8, 1988.

Decided July 8, 1988.

David W. Dratman, Sacramento, Cal., for defendant-appellant McLaughlin; Doron Weinberg, Larson & Weinberg, San Francisco, Cal., for defendant-appellant Bernauer.

Richard J. Bender, Asst. U.S. Atty., Sacramento, Cal., for plaintiff-appellee U.S.

Before GOODWIN, FARRIS and NELSON, Circuit Judges.

NELSON, Circuit Judge:

McLaughlin and Bernauer were indicted for possession with intent to distribute the drug 3,4–methylenedioxymethamphetamine (MDMA). Bernauer was also indicted for possession with intent to distribute cocaine. Police obtained warrants for McLaughlin's apartment and for Bathcrest, McLaughlin and Bernauer's shared business. While searching Bathcrest, officers found cocaine in Bernauer's briefcase. Bernauer then consented to a search of his apartment, where the officers found additional evidence, including MDMA, and drug paraphenalia.

Appellants moved to suppress the evidence, alleging invalidity of the warrants and searches, and to dismiss the action, alleging that the prohibition of MDMA was itself invalid. They contend that the facts supporting the warrant lacked sufficient nexus to the premises to create probable cause, that information used to support the warrant was too old to support a finding of probable cause, and that the warrant contained overbroad descriptions of the items to be seized. They also object to the search of Bernauer's briefcase, claiming that it exceeded the scope of the warrant. Finally, they contend that the regulatory scheme under which the drug MDMA was made illegal was unconstitutional and beyond the scope of agency power. After these motions were denied, appellants pled guilty, reserving for appeal the issues raised by the motions to suppress and to dismiss.

We reverse McLaughlin and Bernauer's convictions for possession with intent to distribute MDMA. Because the regulatory scheme under which possession and distribution of MDMA were made illegal has been struck down as beyond the power delegated to the D.E.A., *see United States v. Emerson*, 846 F.2d 541 (9th Cir. 1988), neither defendant committed a crime by possessing MDMA at the time of arrest.

We affirm Bernauer's conviction for possession with intent to distribute cocaine. We need not decide whether the warrant was based on probable cause, because we find that even if the warrant lacked probable cause, the evidence was properly admitted under the exception to the exclusionary rule announced in *United States v. Leon*, 468 U.S. 897, 922–23, 104 S.Ct. 3405, 3420–21, 82 L.Ed.2d 677 (1984). The officers in this case relied on the determination of a neutral magistrate that they had probable cause to search Bathcrest. We cannot say that their reliance was objectively unreasonable. There is no evidence that the affidavit upon which the warrant was

based contained any knowing or reckless falsehood, or that the magistrate abandoned his judicial role. The warrant, even if not based on probable cause, was not so deficient that no officer could reasonably have believed it to be valid, and the affidavit did not lack all indicia of probable cause. *See id.* at 923, 104 S.Ct. at 3421. We therefore must decide only two remaining issues: whether the warrant was overbroad, and whether the police exceeded the scope of the warrant by searching Bernauer's briefcase.

### Warrant Overbroad

The search warrant describes four general categories of evidence to be seized: (1) drugs and drug distribution paraphenalia; (2) evidence of possession or sale of cocaine; (3) evidence of conspiracy to distribute cocaine; and (4) evidence of control or ownership of the premises searched. Appellants contend that the warrant describes the latter three categories with insufficient particularity to satisfy the fourth amendment, which does not permit warrants for general searches that leave discretion to the officers executing the warrant. *Marron v. United States*, 275 U.S. 192, 196, 48 S.Ct. 74, 76, 72 L.Ed. 231 (1927).

■ Although precise description of the items to be seized is not always possible, some specificity is required. How specific the warrant must be varies with the circumstances, including "(1) whether probable cause exists to seize all items of a particular type described in the warrant; (2) whether the warrant sets out objective standards by which executing officers can differentiate items subject to seizure from those [that] are not; and (3) whether the government was able to describe the items more particularly in light of the information available to it at the time the warrant was issued." *United States v. Spilotro*, 800 F.2d 959, 963 (9th Cir.1986) (citations omitted). Whether a warrant describes items to be seized with sufficient specificity is reviewed de novo. *Id.*

Appellants raise one general objection and several specific objections to the descriptions of categories two, three and four. The warrant describes category two as "articles of personal property tending to establish and demonstrate sales, possession for sale, and possession of cocaine as well as other controlled substances, consisting in part of and including United States Currency, buyer list, seller list, and recordation of sales and purchases." It describes category three as "articles of personal property tending to establish the existence of conspiracy to possess with intent to distribute cocaine, as well as other personal telephone books, address books, telephone bills, papers and documents containing lists of names." It describes the fourth category as "articles of personal property tending to establish the identity of persons in control of the area to be searched, and consisting in part of and including, but not limited to, utility company receipts, addressed envelopes, keys, photographs, and business records."

Appellants suggest that these descriptions fail to identify the items to be found with sufficiently specific descriptions. They rely for support on *Spilotro*, 800 F.2d 959 and *United States v. Cardwell*, 680 F.2d 75 (9th Cir.1982). In *Cardwell*, we struck down as overbroad a search warrant for "corporate books and records, including but not limited to cancelled and duplicate checks, check stubs, journals, ledgers, weekly summaries, driver trip envelopes, and daily schedules ... which are the fruits and instrumentalities, of violations of 26 U.S.C. § 7201." 680 F.2d at 76. The search for evidence of tax fraud was disallowed because it required the police to distinguish between fraudulent and nonfraudulent records without offering guidelines for distinguishing them, because making such distinctions exceeded police competence, and because information available from a prior investigation would have permitted more specific descriptions. *Id.* at 78.

In *Spilotro*, the court rejected a warrant permitting police to search for "notebooks, notes, documents, address books and other records ... which are evidence of violations of 18 U.S.C. § 1084, 1952, 1955, 892–894, 371, 1503, 1511, 2314, 2315, 1962–1963."

800 F.2d at 961. The court rejected this warrant on two grounds. First, the government had sufficient information to narrow the description of the items sought. The government sought evidence of loan sharking and gambling. Although it did not know specifically what documents would be found, it might have specified that any records seized must relate to gambling, and it might have given examples such as "pay and collection sheets, lists of loan customers, loan accounts and telephone numbers, line sheets, bet slips, tally sheets, and bottom sheets." *See id.* at 964 (quoting *United States v. Timpani*, 665 F.2d 1, 4–5 (1st Cir.1981)). Second, the warrant failed even to describe the criminal activity suspected. It provided only a list of statutes. The court noted that the statutes listed could encompass hundreds of criminal acts, and suggested that reference to specific illegal activities would have saved the warrant. *Spilotro*, 800 F.2d at 964–66.

■ The warrant in this case differs significantly from those struck down in *Cardwell* and *Spilotro*. This warrant does not, as in *Cardwell*, require police to exceed their expertise by distinguishing documentary evidence of fraudulent and nonfraudulent transactions. The items sought are much more easily identified as evidence of drug sales. Furthermore, the specific crimes charged are described by the warrant. The officers need not guess regarding the sections of the United States Code. Also, lists of particular examples are given. Just as the *Spilotro* panel suggested that the warrant might have specified "pay and collection sheets [and] lists of loan customers ...," 800 F.2d at 964, this warrant offered specific examples including "buyer list, seller list, and recordation of sales and purchases." The warrant is therefore sufficiently specific under the rules suggested by *Cardwell* and *Spilotro*.

Appellants also raise two specific objections to the descriptions. First, appellants suggest that the last section of the warrant, which authorizes search for evidence of ownership and control of the premises, is overbroad because it does not limit the search to those records connected with any criminal activity.

■ We find this argument unpersuasive. A search warrant may be used, not only to gather evidence of a criminal activity, but also to gather evidence of who controlled the premises suspected of connection with criminal acts. *See United States v. Crozier*, 777 F.2d 1376, 1380–81 (9th Cir.1985); *United States v. Alexander*, 761 F.2d 1294, 1301–02 (9th Cir.1985); *United States v. Whitten*, 706 F.2d 1000, 1008–09 (9th Cir.1983), *cert. denied*, 465 U.S. 1100, 104 S.Ct. 1593, 80 L.Ed.2d 125 (1984).

■ Second, appellants note that the sentence describing evidence of conspiracy to be seized is poorly drafted. It seems to suggest that "personal telephone books, address books, telephone bills, papers and documents containing lists of names" may be seized even if they are unrelated to a conspiracy to distribute cocaine. Of course, such permission would exceed the constitutionally valid scope of a warrant. Search warrants must, however, be understood in a non-technical manner. *See United States v. Ventresca*, 380 U.S. 102, 108–09, 85 S.Ct. 741, 745–46, 13 L.Ed.2d 684 (1965). Because this sentence would make no sense unless interpreted to mean objects related to the conspiracy, the warrant, reasonably interpreted, was sufficiently specific.

### Scope of the Search

■ Bernauer argues that the warrant did not authorize search of his briefcase and that his consent to search his home was derived from this illegal search. On this basis, he seeks to have the evidence against him suppressed. Whether police exceed the scope of a warrant in their search is reviewed de novo. *See United States v. Frazin*, 780 F.2d 1461, 1467 (9th Cir.), *cert. denied*, 479 U.S. 844, 107 S.Ct. 158, 93 L.Ed.2d 98 (1986).

Bernauer relies on *Ybarra v. Illinois*, 444 U.S. 85, 100 S.Ct. 338, 62 L.Ed.2d 238 (1979), which struck down the search of a patron who was present in a bar for which

a search warrant for drugs was executed. The Court held that "a person's mere propinquity to others independently suspected of criminal activity does not, without more, give rise to probable cause." *Id.* at 91, 100 S.Ct. at 342. Bernauer suggests that the search of his briefcase should be governed by *Ybarra*.

The district court reached an opposite conclusion, relying on *United States v. Micheli*, 487 F.2d 429 (1st Cir.1973). The First Circuit held in *Micheli* that a warrant permitted searching the briefcase of the co-owner of the business for which the warrant was issued, even though there was no evidence of his criminal activity. The court said that because of the co-owner's special relationship to the business,

> [he] was not ... a mere visitor or passerby who suddenly found his belongings vulnerable to a search of the premises.... [I]t could reasonably be expected that some of his personal belongings would be there. Thus, the showing of probable cause ... which was required prior to the initial intrusion into [the] office reasonably comprehended within its scope those personal articles, such as [a co-owner's] briefcase, which might be lying about the office."

*Id.* at 432.

Appellant suggests that *Micheli* should be rejected because it conflicts with *Ybarra*. He argues that because frequent patrons have special relationships with locations no less than co-owners, permitting the search of his briefcase would be tantamount to overruling *Ybarra*. We disagree. Co-owners have control over premises not available to patrons, and their relationship to the location is more predictable and permanent. *Micheli* need not extend to guests. Its rule seems reasonably applicable to owners.

Appellant also argues that *Micheli* is distinguishable because in that case the business establishment was believed to be a criminal enterprise; in this case, he says, the business is legitimate. We reject this distinction. The warrant was issued on the assumption that a criminal activity occurred, and that evidence of the crime. would be found at Bathcrest. Because Bernauer was co-owner of Bathcrest and had control over the location, the entire location was subject to search even though police had no probable cause to suspect Bernauer. *See United States v. Miller*, 753 F.2d 1475, 1481 (9th Cir.1985).

### Conclusion

McLaughlin and Bernauer's convictions for possession with intent to distribute MDMA are REVERSED. Possession and distribution of these drugs was not criminal at the time of their arrest. Bernauer's conviction for possession with intent to distribute cocaine is AFFIRMED. Even if the warrant lacked probable cause, the police acted in good-faith reliance on a neutral magistrate's decision when they searched Bathcrest. The warrant described the items to be seized with sufficient particularity, and the search of Bernauer's briefcase fell within the scope of the warrant.