**UNITED STATES of America, Plaintiff–Appellant,**

v.

**Patricia YOUNG, Defendant–Appellee.**

**No. 89–7846.**

United States Court of Appeals, Eleventh Circuit.

Aug. 15, 1990.

J.B. Sessions, III, U.S. Atty., Charles A. Kandt, Asst. U.S. Atty., Mobile, Ala., for plaintiff-appellant.

Neil L. Hanley, Mobile, Ala., for defendant-appellee.

Before EDMONDSON, Circuit Judge, HILL[*] and HENDERSON, Senior Circuit Judges.

HILL, Senior Circuit Judge:

The appellee in this case, Patricia Young, was indicted along with her husband, Clyde E. Young, Sr., her four sons, her mother-in-law, and two others with conspiracy and several substantive counts of possession with intent to distribute marijuana. The indictment also charged Clyde E. Young, Sr. with conducting a continuing criminal enterprise, and included several property forfeiture counts as well.

Part of the evidence to be used in the Government's case against appellee Young was taken from her during a search conducted on January 21, 1989. On that date officers of the Mobile police department obtained a search warrant from a state judge, authorizing the search of the residence "occupied by Clyde Young" for, among other things, drug records, drug related paraphernalia, and currency. Corporal Sam Cochran of the Mobile Police Department was the affiant for the search warrant, and the officer in charge of executing the warrant.

Clyde Young's residence was located in an isolated rural area about 150 yards beyond the end of a winding dirt road. The house backed up to a wooded area, with no other houses beyond it. There was only an open pasture between it and the nearest house, which belonged to Clyde's mother and father. To reach Clyde's house one had to pass the homes of two of his sisters, one brother, and a great uncle.

Anticipating that relatives or friends might see the approaching police vehicles and give a warning that would allow the Youngs to flee or destroy evidence before the officers could arrive at the house, Corporal Cochran ordered three officers to approach the house from the rear, on foot, to observe anyone who might flee carrying contraband. Once on the property these officers hid behind a shed, about 25 or 30 yards from the house. They arrived a minute or two before the main body of approximately eight officers arrived in police vehicles.

Leading the team to watch the rear of the house was Agent Roy Blount, who knew Clyde and Patricia Young personally. Less than a minute before the officers in vehicles arrived, Agent Blount saw the appellee, Patricia Young, come out of the back of the house. At the suppression hearing agent Blount testified that Patricia

---

[*] *See* Rule 34-2(b), Rules of the U.S. Court of Appeals for the Eleventh Circuit.

seemed as if she was in a hurry, looked to the right and left as she was coming out the back door, and moved in a furtive manner as if sneaking into the woods behind the house.

Agent Clifton Brown, of the federal Drug Enforcement Administration, was one of the first officers arriving with the vehicles. He came around the side of the house just in time to see Patricia Young going into the woods. He testified that she was acting in a "sneaking manner," that she was "kind of hunched down and looking from left to right as if she were sneaking away from the residence."

When Patricia was about 15 or 20 yards away from the back door of the residence, Agent Blount revealed himself and shouted "Patricia, halt." She stopped and Agent Blount ran up to her. Agent Brown, who was in the side yard and could observe both the front and the rear of the house, testified that Patricia left the house simultaneously with the police vehicle's arrival.

Patricia was carrying a bulging purse in her hand. Agent Blount testified that he could not remember if the purse was open or not, but he said it "seemed like it was open because it was bulged out." He testified that he took the purse, looked inside it and saw a large quantity of cash, several spiral notebooks, and a handgun.[1] Within the house the police found and seized three firearms, a set of scales, various papers, phone number lists, and three large green plastic bags with residue inside them. Neither Patricia nor Clyde Young were arrested that day.

Prior to trial, Young moved to suppress the evidence taken from her purse during search, claiming that it was the fruit of an unlawful search of her person in violation of the Fourth Amendment. This motion was referred to a magistrate who held an evidentiary hearing on the matter. The magistrate then recommended suppressing the evidence, which course of action was adopted by the district court judge immediately prior to trial. The Government then filed this appeal.

The magistrate, and by adoption of his findings the district court, suppressed the evidence taken from Patricia Young on grounds that the search warrant authorized only "a search of the premises identified as that belonging to Clyde Young," and did not authorize the search of Ms. Young's purse outside the residence. The court also determined that a search of Ms. Young's purse, because it was appended to her body, should be considered a search of her person, citing *United States v. Graham*, 638 F.2d 1111, 1114 (7th Cir.), *cert. denied* 450 U.S. 1034, 101 S.Ct. 1748, 68 L.Ed.2d 231 (1981). As such, the court found the warrant, which provided only for search of the premises, was not sufficient to cover a search of Ms. Young's person, or her purse as an extension thereof.

The Government argues that the search and seizure of Ms. Young's purse was carried out lawfully because (1) the search warrant covering the premises covered the purse when it was taken outside the premises given the "nexus" between the purse, Ms. Young and the premises, or (2) that exigent circumstances justified the search.[2]

■ Initially, we disagree with the district court's implicit conclusion that any search of a purse, or similar personal effects, in the physical possession of a person necessarily violates the Fourth Amendment where a valid search warrant covers only "the premises." We agree instead with the position taken by the First Circuit Court of Appeals in *United States v. Micheli*, 487 F.2d 429 (1st Cir.1973), and *United States v. Gray*, 814 F.2d 49, 51 (1st Cir.1987). In *Micheli*, while noting that no bright line rule exists, the First Circuit held that in determining whether a search of personal

---

1. There was some conflicting testimony as to whether all these articles were contained in the purse, or if the spiral notebooks, which documented alleged drug transactions, were in a white plastic bag that Patricia carried in addition to the purse. Given our holding today, this discrepancy is not important to this appeal.

2. Although on appeal the Government also claims that the search was justified under *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), this argument was not properly made to the magistrate or the district judge, and will not be considered here.

effects violates the scope of a "premises" warrant, one must consider the relationship between the object, the person and the place being searched. *Id.* at 431. Using this formula the First Circuit reasoned that the usual occupant of a building being searched would lose a privacy interest in his belongings located there; however, a transient visitor would retain his expectation of privacy, whether or not his belongings are being held by him or have been temporarily put down. Thus, the court held that a briefcase belonging to an employee could be searched pursuant to a premises warrant, whether found in his possession or under his desk. *Id.* at 431–2. The First Circuit again adhered to this test in *Gray*, upholding the search of a visitor's jacket pursuant to a premises warrant covering a residence where a drug deal had just taken place. 814 F.2d at 51.[3]

We find this approach more reasonable than the physical proximity approach used by the district court.[4] Indeed, a mere physical proximity rule would facilitate the insulation of incriminating evidence from lawful searches through the simple act of stuffing it in one's purse or pockets.[5] We do not wish to condone such a blanket rule.

Contrary to appellee's protestations, requiring an analysis of a person's relationship to the place lawfully searched is perfectly consistent with the Supreme Court's decision in *Ybarra v. Illinois*, 444 U.S. 85, 100 S.Ct. 338, 62 L.Ed.2d 238 (1979). In that case the Supreme Court decided that search of a person who happened to be at a bar during a search pursuant to a premises warrant was not subject to a lawful search absent "probable cause particularized with respect to that person." 444 U.S. at 91, 100 S.Ct. at 342. The Court held that "a person's mere propinquity to others independently suspected of criminal activity does not, without more, give rise to probable cause to search that person." *Id.* However, the *Ybarra* decision did not state that the relationship between the person searched, the warrant and the premises are irrelevant in determining whether a search falls outside the permissible scope of the Fourth Amendment. Indeed, it was the lack of such a relationship that pointed to a finding of no probable cause in *Ybarra*.

Of course, in this case the Government would have us go one step further and hold that a personal object in the process of being carried *outside* the premises is nonetheless covered by the search warrant because of the nexus between the person carrying the object and the premises.

---

**3.** The Fifth Circuit has also adopted the "relationship" analysis in lieu of the physical proximity test, and held that the flight bag of an overnight guest was subject to search pursuant to a premises warrant. *United States v. Giwa,* 831 F.2d 538 (5th Cir.1987).

**4.** However, at least two other circuits have relied on the physical proximity test. In *United States v. Teller,* 397 F.2d 494 (7th Cir.), *cert. denied,* 393 U.S. 937, 89 S.Ct. 299, 21 L.Ed.2d 273 (1968), the Seventh Circuit Court of Appeals determined that a search warrant covering a private home allowed the search of a purse that had been in the hands of a resident of the premises who walked in as the police were commencing their search. However, the owner of the purse had put the purse down on the bed momentarily, and then walked into the other room, at which point the policemen conducting the search looked inside the purse and discovered incriminating evidence. Relying on the fact that the woman was no longer in physical contact with her purse, the court concluded that, "defendant's purse lying on the bed was merely another household item subject to the lawful execution of the search warrant which the federal agent's held and were enforcing." *Id.* at

497. Similarly, in *United States v. Johnson,* 475 F.2d 977 (D.C.Cir.1973), the court, as in *Teller,* focused on the physical location of a purse, and held that the search of a woman's purse who was a visitor on the premises was covered by the warrant because it was not being worn by the woman and thus did not constitute "an extension of her person so as to make the search one of her *person.*" *Id.* at 979 (emphasis in original). Nonetheless, we feel an analysis of the relationship of the person to the premises to be the better rule.

**5.** This possibility also concerned Justice Rehnquist in *Ybarra v. Illinois,* where he stated, "An absolute bar to searching persons not named in the warrant would often allow a person to frustrate the search simply by placing the contraband in his pocket. I cannot subscribe to any interpretation of the Fourth Amendment that would support such a result, and I doubt that this Court would sanction it if that precise fact situation were before it." 444 U.S. 85, 102, 100 S.Ct. 338, 348, 62 L.Ed.2d 238 (1979) (Rehnquist, J. dissenting).

However, we decline to accept this invitation, or to remand the case for a determination of whether Ms. Young's relationship to the premises justified a search of her purse based solely on the "premises warrant," because a less novel, well-tested doctrine is available to resolve the facts in this case. The circumstances surrounding the search of Ms. Young's purse fall well within the exigent circumstance doctrine.

■ The exigent circumstance doctrine provides that when probable cause has been established to believe that evidence will be removed or destroyed before a warrant can be obtained, a warrantless search and seizure can be justified. *See e.g., United States v. Tartaglia*, 864 F.2d 837 (D.C.Cir.1989). As many courts have noted, the need for the exigent circumstance doctrine is particularly compelling in narcotics cases, because contraband and records can be easily and quickly destroyed while a search is progressing. *See e.g., United States v. Johnson*, 802 F.2d 1459, 1462 (D.C.Cir.1986).

■ Police officers relying on this exception must demonstrate an objectively reasonable basis for deciding that immediate action is required. We agree with the standard set forth by the Court of Appeals for the Seventh Circuit, which stated the test this way:

In determining whether agents reasonably feared imminent destruction of the evidence, the appropriate inquiry is whether the facts, as they appeared at the moment of entry, would lead a reasonable, experienced agent to believe that evidence might be destroyed before a warrant could be secured.

*United States v. Rivera*, 825 F.2d 152, 156 (7th Cir.), *cert. denied sub nom., Robles v. United States*, 484 U.S. 979, 108 S.Ct. 494, 98 L.Ed.2d 492 (1987).

■ In this case, the agent who searched Ms. Young's purse had ample probable cause to believe that she was in the process of fleeing with evidence. The road to the Young's residence was lined with relatives who could have issued an alert that the police were on their way. She was seen sneaking out of the back of the house, into an area where there were only woods. She was acting in a suspicious manner, looking right to left, hunched over, and in a hurry. The agent had an objectively reasonable basis to believe that she was attempting to flee with contraband or evidence. He was therefore justified in searching her purse, even in the absence of a search warrant specifically covering her "person."

In suppressing this evidence, the district court determined that no exigent circumstance existed because the police had the right to detain, although not search, Ms. Young, because she was present at the time that a warrant for the premises was being executed. In *Michigan v. Summers*, 452 U.S. 692, 101 S.Ct. 2587, 69 L.Ed.2d 340 (1981), the Supreme Court held that "a warrant to search for contraband founded on probable cause implicitly carries with it the limited authority to detain the occupants of the premises while a proper search is conducted." 452 U.S. at 705, 101 S.Ct. at 2595.[6] The court thus apparently determined that there was sufficient time, while the police were conducting the search in the Young's isolated house in the country, for one of the officers to go get another search warrant for the person of Ms. Young, then come back out to the house and search her purse. We do not find this conclusion supported in the record. There is no evidence to indicate that a second search warrant could have been obtained within a time frame that would have prevented Ms. Young's flight and potential destruction of valuable evidence.

In arguing that no probable cause existed to search her purse, appellee relies heavily on a case from the Ninth Circuit Court of Appeals, *United States v. Robert-*

---

**6.** The person detained in *Summers* was arrested immediately after the police finished their search, and then personally searched subject to a lawful arrest prior to leaving the premises in police custody. Because the Youngs were not arrested until some time after the search of their residence was conducted, the *Summers* decision does not address the precise question raised by this case. However, there is nothing in the *Summers* decision to preclude the result we reach today.

son, 833 F.2d 777 (1987). However, in *Robertson*, the Ninth Circuit specifically found that there was insufficient probable cause to search a backpack belonging to a defendant, Ms. Steeprow, as she left the premises to be searched because "the extent of the officer's knowledge of Steeprow's criminal activity" was limited to the fact that "she was leaving the house where officers had probable cause to believe that criminal activity was afoot." *Id.* at 784. The court thus found the search of the back pack carried by the defendant in that case to be indistinguishable from the onlookers at the bar in *Ybarra*. However, in this case, the agent who saw Patricia Young exit from the house knew who she was; knew that she was the wife of the prime suspect; knew that she was possibly, if not probably, warned about the impending search; and from her suspicious behavior had every reason to suspect that she was carrying contraband or evidence in her "bulging purse." The search of her purse is thus clearly distinguishable from the search of Ms. Steeprow's backpack in *Robertson*.

The decision of the district court to suppress evidence seized from Patricia Young is REVERSED and the case REMANDED for trial consistent with this opinion.