[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JULY 21, 2006
THOMAS K. KAHN
CLERK

No. 06-10896
Non-Argument Calendar

_____

D. C. Docket No. 05-00087-CR-3-RV-001

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

RODRIGO ULLO MARTINEZ,
a.k.a. Chino,
a.k.a. Rodrigo Martinez-Ulloa,
JUAN LUIS NIEVES-VILLAREAL,

Defendants-Appellants.

_____

Appeals from the United States District Court
for the Northern District of Florida

_____

**(July 21, 2006)**

Before BLACK, BARKETT and PRYOR, Circuit Judges.

PER CURIAM:

Rodrigo Ullo Martinez and Juan Luis Nieves-Villareal appeal their convictions for drug trafficking and unlawful possession of firearms. Martinez argues that the evidence was insufficient to sustain one of his firearms convictions. Martinez and Villareal both argue that the district court erred when it declined to suppress evidence seized in a search of Martinez's residence and the government engaged in prosecutorial misconduct during closing argument. We affirm.

## I. BACKGROUND

Agents of the Drug Enforcement Agency and the Sheriff of Escambia County, Florida, used a confidential informant to make several controlled purchases of narcotics from Jimmy Foley who bragged to the informant that he sold a large amount of narcotics supplied by Martinez. The agents then used Foley to set up a controlled purchase from Martinez at a motel. Martinez informed Foley that the delivery would be made by a friend of Martinez.

At the arranged time and place, Villareal arrived in a vehicle registered to Martinez and completed the sale to Foley. The entire transaction was monitored by video by agents who then arrested Villareal. The agents took Villareal's cell phone and called Martinez, hoping that Martinez would believe he was speaking to Villareal. Martinez was not fooled and fled from his location. Five to ten minutes

2

later, agents who had been monitoring Martinez arrested him.

Shortly afterwards, the agents entered Martinez's residence without a warrant to secure the premises to prevent the destruction of evidence. The agents did not search the premises for evidence until after the warrant was issued a few hours later. The warrant did not issue on the basis of anything observed by the agents who entered the residence.

The search by the agents based on the warrant uncovered evidence of a drug trafficking conspiracy. The agents discovered electronic scales and 810 grams of cocaine in a common area of the residence. In the bedroom belonging to Martinez, the agents discovered an unloaded revolver, five rounds of ammunition, and approximately $15,000 in cash under the mattress. In the bedroom occupied by Villareal, the agents found two kilograms of cocaine, paperwork, $5000, and two submachine guns. One of the guns was in a briefcase in a closed closet.

Martinez and Villareal were charged with one count each of conspiracy to distribute narcotics, possession with intent to distribute narcotics, possession of firearms in relation to a drug trafficking offense, and possession of machine guns. Martinez also was charged with being a felon in possession of a firearm. Villareal was charged with being an illegal alien in possession of a firearm.

Martinez and Villareal first learned during trial that the agents had secured

3

the residence before the issuance of the warrant. Martinez and Villareal then moved to suppress this evidence, but their motions were denied. During closing argument, the government noted that defense counsel had not given the jury the definition of some legal terms and stated that defense counsel had "beat on Mr. Foley . . . and beat on his testimony." In requesting more time for closing argument, the prosecutor referred to defense counsel's objections as "interruptions." Defense counsel objected but the objections were overruled. The government also referred to popular television crime dramas, but defense counsel did not object to that comment. The jury returned a verdict of guilty on all counts and Martinez and Villareal were sentenced to total terms of imprisonment of 530 and 529 months, respectively.

## II. STANDARD OF REVIEW

We review de novo sufficiency of the evidence and "resolve all reasonable inferences in favor of the jury's verdict." United States v. Pineiro, 389 F.3d 1359, 1367 (11th Cir. 2004). "The evidence is sufficient so long as a reasonable trier of fact, choosing among reasonable interpretations of the evidence, could find guilt beyond a reasonable doubt." Id. (internal citations omitted). On a motion to suppress evidence, we review the findings of fact of the district court for clear error and the application of law to the facts de novo. United States v. Bervaldi, 226 F.3d

4

1256, 1262 (11th Cir. 2000).  We review <u>de novo</u> determinations of the district court regarding prosecutorial misconduct.  <u>United States v. Noriega</u>, 117 F.3d 1206, 1218 (11th Cir. 1997).  When an issue is raised for the first time on appeal, we review for plain error.  <u>United States v. Rahim</u>, 431 F.3d 753, 756 (11th Cir. 2005).

### III.  DISCUSSION

Martinez and Villareal raise several arguments on appeal.  Martinez argues that the evidence was insufficient to convict him of possession of the submachine guns that were discovered in Villareal's bedroom.  Martinez and Villareal both argue that the agents' entry of Martinez's residence to secure evidence was an illegal search and statements made by the prosecutor during closing arguments were prejudicial to the defendants.  Each argument fails.  We address each argument in turn.

First, Martinez erroneously argues that there was insufficient evidence to convict him of possession of the submachine guns because they were found in Villareal's room, there was no evidence Martinez had control or dominion over Villareal's room or that he actually possessed the guns, and there was no evidence Martinez knew the guns were in the house.  To sustain the convictions for possession of those firearms, the government had to establish that Martinez had, at

least, constructive possession of the firearms. United States v. Miranda, 425 F.3d 953, 959 (11th Cir. 2005). Constructive possession can be established through evidence that Martinez had "ownership, dominion, or control over the contraband itself or the premises on which it [was] concealed." United States v. Montes-Cardenas, 746 F.2d 771, 778 (11th Cir. 1984).

The evidence was sufficient for the jury to infer that Martinez exercised dominion or control over the house. See, e.g., United States v. Harris, 20 F.3d 445, 454 (11th Cir. 1994) (finding that unrestricted access to a house is sufficient to infer constructive possession of drugs in the basement). Martinez was listed as the resident of the house, he paid the utility bills, two cars registered to his name were parked in the driveway, and the agents discovered paperwork in Martinez's name in the house. There was no evidence to indicate that Villareal's bedroom was somehow excluded from Martinez's dominion or control of the entire house.

Second, Martinez and Villareal argue that the district court erred when it found there were exigent circumstances to permit a warrant less entry into Martinez's home to prevent destruction of the evidence. This argument fails. "Exigent circumstances arise when authorities have reason to believe that evidence is in danger of being destroyed or removed." United States v. Mikell, 102 F.3d 470, 475 (11th Cir. 1996). The agents had reason to believe that the evidence was

6

in danger of being destroyed because after Martinez realized the drug deal had failed he could have used his cell phone to call his residence and order the drugs destroyed. The invocation of exigent circumstances "is 'particularly compelling in narcotics cases' because narcotics can be quickly destroyed." Id. (quoting United States v. Young, 909 F.2d 442, 446 (11th Cir. 1990)).

There is no evidence that the agents who secured the residence obtained any evidence before the warrant arrived. The officers entered the residence, made sure that no one was hiding who could have destroyed any evidence, and watched the residents until the search warrant arrived. Seizure of a residence to prevent the destruction of evidence while waiting for a warrant does not constitute an illegal search under the Fourth Amendment. See United States v. Morales, 868 F.2d 1562, 1575-76 (11th Cir. 1989).

Third, Martinez and Villareal argue that certain statements made by the prosecutor were improper and prejudiced the trial. "Prosecutorial misconduct requires a new trial only if we find the remarks (1) were improper and (2) prejudiced the Defendant's substantive rights." United States v. Delgado, 56 F.3d 1357, 1368 (11th Cir. 1995). "A defendant's substantial rights are prejudiced if there is a reasonable probability that, but for the remarks, the outcome would be different." United States v. Adams, 74 F.3d 1093, 1097 (11th Cir. 1996).

7

The allegedly improper statements made by the government were all made in response to specific statements made in closing arguments by defense counsel, and none of the statements could be classified as misleading the jury or denigrating the defense. There also is no reasonable probability that any of these statements by the government altered the outcome of the trial.

## IV. CONCLUSION

The convictions of Martinez and Villareal are

**AFFIRMED.**