**STATE of Minnesota, Plaintiff,**

v.

**SOUA THAO YANG, Defendant.**

**No. C0–83–2054.**

Court of Appeals of Minnesota.

July 31, 1984.

Hubert H. Humphrey, III, Atty. Gen., Tom Foley, Ramsey County Atty., Steven C. DeCoster, Asst. County Atty., St. Paul, for plaintiff.

Stephen W. Cooper, St. Paul, for defendant.

Considered and decided by POPOVICH, C.J., and NIERENGARTEN and RANDALL, JJ., with oral argument waived.

## OPINION

RANDALL, Judge.

Defendant, who was charged with possession with intent to distribute opium, possession with intent to deliver opium, and possession of opium, moved for suppression of all evidence obtained through a search of her residence. The court ruled the initial search warrant was validly issued and executed, but certified to this court as important and doubtful the question of whether the state was required to obtain a second search warrant or other court order to have the contents of a letter seized from defendant's home translated from Hmong to English. After translation, the state claimed the incriminating contents could be used against her. The question certified to us was: "Was the state required to obtain another search warrant or other court order to have the body of the letter translated from Hmong to English?". We agree with the state and answer the question in the negative.

## FACTS

The facts in this case were stipulated. Police were informed by the Postal Service that a package sent to defendant's address from a refugee camp in Thailand contained opium. They obtained a search warrant for defendant's apartment, authorizing them to seize "opium, papers, invoices, billings, letters and other items that indicate the owner/renter/occupant of the premises * * *" as well as other items to show intent to distribute the opium.

During the search, at which defendant was present, a letter addressed to the defendant at the address searched was seized. The letter, an unsealed aerogramme, was on a television set among several other letters. It was in plain sight. The address on the letter was in English, as was the return address, which indicated the letter was from the same refugee camp as the package of opium. The body of the letter was written in Hmong with the exception of two lines, one of which contained the name of the person to whom the package of opium had been mailed and the other, the name "Mrs. Moua Yang," followed by numbers identical to those found in the return address of the opium package. The letter was seized as evidence that the defendant occupied the apartment and because it was from the same address as the package of opium. No police officer present during the search could read Hmong.

Four days after the search, the letter was given to translators who provided the police with a translation. The translation arguably connected defendant with the package of opium.

## ISSUE

Was the state required to obtain another search warrant or other court order to have

the body of the letter translated from Hmong to English?

## ANALYSIS

This question comes before us pursuant to Minn.R.Crim.P. 28.03.

■ A search pursuant to a warrant may not exceed the scope of that warrant. *Mapp v. Ohio*, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961). The test for determining whether a search has exceeded the scope of the warrant is one of reasonableness, and, in close cases, probable cause will be found to support a search under a warrant where absent the warrant the decision would be otherwise. *Illinois v. Gates*, 462 U.S. ——, 103 S.Ct. 2317, 2331, 76 L.Ed.2d 527 (1983); *State v. Nolting*, 312 Minn. 449, 254 N.W.2d 340, 345 n. 7 (1977).

■ The letter was seized because it tended to identify defendant as one who possessed the premises. Defendant does not contest the use of the letter for that purpose. The letter was also seized, however, because it was sent from the same refugee camp from which the package of opium was sent. An alert investigator would reasonably suspect that a translation of the letter could produce evidence bearing on appellant's connection to the package and her understanding of the nature of its contents. In that way, the letter satisfies the requirement of *Warden v. Hayden*, 387 U.S. 294, 307, 87 S.Ct. 1642, 1650, 18 L.Ed.2d 782 (1967), that there be a nexus between "mere evidence" seized and criminal behavior, since it was immediately apparent that the letter could have evidentiary significance beyond its ability to show defendant's possession of the premises and that the letter's contents were likely to be "reasonably related to the crimes for which the warrant was issued." *Taylor v. Minnesota*, 466 F.2d 1119, 1121 (8th Cir.1972), *cert. denied*, 410 U.S. 956, 93 S.Ct. 1425, 35 L.Ed.2d 689 (1973).

Since the return address indicated the letter was sent from the same refugee camp from which the package of opium was sent, and the initial seizure of the envelope for identification purposes was proper, no further warrant or order was required to authorize its translation. Had one of the searchers read Hmong, the letter could have been translated on the spot. That the translation was done four days later should not make a difference. The envelope and its contents were lawfully in police possession. Just as a car which may be searched where it is found may be towed to the station and searched there as well, a letter which could have been translated on the spot may be taken to the station to be translated. *Chambers v. Maroney*, 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970). Once evidence is lawfully seized, tests such as chemical analysis, ballistics, and other interpretive tests may be run without a further warrant. *See, e.g., Schmerber v. California*, 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966). Logically, a translation is equivalent to an expert's analysis of evidence.

In addition, no significant Fourth Amendment policy would be served by requiring a second warrant before translating the letter. Probable cause was found before the first warrant was issued. Once the letter was validly seized pursuant to the first warrant, requiring a second warrant before it could be translated would be imposing a pro forma requirement which would serve no purpose. On these facts, since the first warrant was validly issued and executed, the Fourth Amendment prohibition against unreasonable search and seizure was satisfied.

## DECISION

The question certified to us was: "Was the State required to obtain another search warrant or other court order to have the body of the letter translated from Hmong to English?"

We answer the question as follows: On the facts of this case, no. A second search warrant or other court order was not needed before the lawfully seized letter was translated from Hmong to English.