STATE of Minnesota, Appellant,

v.

Scott Paul SEARCH, Respondent.

No. C2–90–891.

Supreme Court of Minnesota.

Aug. 2, 1991.

Hubert H. Humphrey, III, Atty. Gen., St. Paul, and James Backstrom, M. Christine Misurek, Dakota County Atty., Hastings, for appellant.

John M. Stuart, State Public Defender, Mark F. Anderson, Asst. Public Defender, Minneapolis, for respondent.

WAHL, Justice.

This pre-trial appeal by the state asks us to determine whether evidence obtained as the result of a warrantless search of respondent's car as well as respondent's post-arrest statements and evidence obtained with a warrant from respondent's apartment was properly suppressed by the trial court. The respondent, Scott Paul Search, was charged, pursuant to Minn.Stat. § 609.245 (1990), with aggravated robbery. Following an omnibus hearing, the trial court suppressed the evidence and dismissed the case. The court of appeals affirmed. We reverse, reinstate the charge and remand for further proceedings.

Shortly after 11:30 p.m. on February 1, 1990, a masked man armed with a long-barrelled gun robbed the Cahill Video Store

in Inver Grove Heights. The robber, after kicking and threatening the 17 year-old store clerk, bound her with green duct tape before leaving with a VCR, a camcorder and approximately $180 in cash. The clerk described the robber as a young male, approximately 5'7" tall, slim build, "very" dark brown eyes with long eyelashes and suntanned hands. He was wearing a brown ski mask, long green army jacket, camouflage pants and brown boots, and he tried to disguise his voice. The clerk gave the police the names of 3 or 4 possible suspects, including respondent. Respondent was a regular customer of the video store and the store's tanning booth and had been in earlier in the evening. The clerk said the robber's eyes "looked like Scott Search's."

On February 8, 1990, Investigator Gregory Olson of the Inver Grove Heights police department went to respondent's apartment to question him about the robbery. Respondent was nervous as he stepped from his apartment into the hallway while closing the door behind him. Respondent refused Olson's request to search the apartment. When asked why he was nervous, respondent claimed he might have an outstanding arrest warrant for unpaid traffic tickets. Olson offered to check on the warrant if he could use respondent's phone; respondent agreed and let Olson into the apartment.

Olson noted that respondent's apartment was sparsely furnished with only a stereo and two speakers in the living room. He asked permission to search further, including a walk-in closet, but respondent refused, claiming there was a "sick girl" in the bedroom at the time. Respondent then asked Olson to leave.

Olson left and waited down the hallway. Several minutes later respondent came out, saw Olson in the hallway and immediately went back into his apartment. Olson then went to his unmarked squad car and parked by the outdoor pool. Approximately ten minutes later he saw respondent standing by a dumpster in the adjacent Plywood Minnesota parking lot with a red duffel bag at his feet which was big enough to hold a VCR and camcorder. Olson drove towards the dumpster to ask respondent what was in the duffel bag. Respondent saw Olson approaching. As Olson was rolling down his window, respondent picked up the duffel bag, ran past the squad car, and got into the passenger seat of a small Honda that had pulled up behind Olson's car. The Honda, driven by a woman, drove off.

Olson followed the car out of the parking lot and radioed for help. He checked the license plate and found the Honda was registered to respondent. Olson followed the car out of Inver Grove Heights, through West St. Paul and South St. Paul and on to I-494. When the back-up squad car arrived, Olson stopped the Honda, asked respondent to get out and frisked him. Respondent began crying, saying "I love you" to the driver of the Honda, Stephanie Nelson. Olson put respondent in his squad car, then went back to the Honda and felt the red duffel bag lying on the floor of the car on the passenger's side. He could feel two large rectangular objects inside the bag. Olson then opened the bag and found a VCR and a camcorder. Olson asked Nelson if she owned the car and when she said yes, he asked if he could search the trunk and she agreed. Inside the trunk Olson found a brown ski mask, a long-barrel BB gun, a camouflage shirt, and a roll of green duct tape. Olson impounded the car, arrested respondent for robbery and brought both Nelson and respondent to the Inver Grove Heights police station for questioning. On the way to the station, respondent banged his head against a window saying "[his] dad made [him] do it."

At the station, Olson read respondent the *Miranda* warning but did not ask if respondent would waive his right to an attorney. When respondent was asked if he knew why he was there, he said yes, because he had robbed a video store. Respondent then asked what was going to happen to him. Olson told respondent that the police were going to help him but that they needed a confession to avoid a long trial. Olson also told respondent that if the case went to trial there would be no opportunity for a

plea bargain or sentence reduction. Respondent asked for an attorney but Olson did not follow up on this request. Respondent then confessed not only to robbing the video store, but to robbing a Taco John's fast-food store as well. Olson later searched respondent's apartment under warrant and found a .22 rifle. The video store clerk was able to identify the rifle as well as the brown mask, camouflage pants, VCR and camcorder taken from respondent's car.

Respondent, charged with aggravated robbery, moved for suppression of all of the evidence on fourth amendment grounds and for dismissal of the charge. The trial court, in a carefully-crafted order and memorandum, granted respondent's motions. First, the trial court held the stop of respondent's vehicle was constitutionally permissible because Olson had enough "reasonable suspicion" to justify an investigative stop. *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). Next, the trial court held the warrantless search of respondent's duffel bag was unconstitutional because it could not be justified under the automobile exception, *Arkansas v. Sanders*, 442 U.S. 753, 99 S.Ct. 2586, 61 L.Ed.2d 235 (1979), *United States v. Chadwick*, 433 U.S. 1, 97 S.Ct. 2476, 53 L.Ed.2d 538 (1977); nor as a search incident to arrest, *New York v. Belton*, 453 U.S. 454, 101 S.Ct. 2860, 69 L.Ed.2d 768 (1981); nor as an investigative search, *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868.

The trial court then held that because the warrantless search of defendant's car trunk could not be justified on the ground of third-party consent, the evidence obtained must be excluded as "fruits" of the illegal duffel bag search. *Wong Sun v. United States*, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963). The trial court also excluded respondent's post-arrest statements, as well as the items seized from his apartment, because the evidence was fruit of the illegal duffel bag search having no independent source of discovery. Lastly, the trial court suppressed respondent's confession as the product of interrogation conducted not only with an inadequate *Miranda* warning, but with improper promises of leniency and help, aggravated by an ignored request from respondent to speak with an attorney.

On appeal, the state claims the trial court erred in suppressing evidence seized in the warrantless search of respondent's duffel bag and car trunk, respondent's spontaneous, post-arrest statements, and evidence seized under warrant from respondent's apartment.

■■■ 1. The critical issue is whether the trial court properly suppressed the VCR and camcorder obtained in the warrantless search of respondent's duffel bag. Warrantless searches are per se unreasonable under the fourth amendment unless the search falls within one of several specific exceptions. *Coolidge v. New Hampshire*, 403 U.S. 443, 454–55, 91 S.Ct. 2022, 2031–32, 29 L.Ed.2d 564 (1971). Under the automobile exception to the warrant requirement, police may search a vehicle without a warrant, including any closed containers within the vehicle, if they have probable cause to believe the search will result in a discovery of evidence or contraband. *United States v. Ross*, 456 U.S. 798, 102 S.Ct. 2157, 72 L.Ed.2d 572 (1982). Under *Arkansas v. Sanders*, 442 U.S. 753, 99 S.Ct. 2586, 61 L.Ed.2d 235 (1979) and *United States v. Chadwick*, 433 U.S. 1, 97 S.Ct. 2476, 53 L.Ed.2d 538 (1977), police may not search a closed container within a vehicle without a warrant if they have probable cause directed solely at the container instead of the entire vehicle.

The trial court determined that while the police may have had probable cause to believe the duffel bag contained evidence from the robbery, the police did not have probable cause to believe the vehicle contained evidence from the robbery because they had no basis to believe that either the car or the driver of the car had been involved in the robbery. Relying on *Sanders* and *Chadwick*, the trial court then held that because probable cause was directed at the duffel bag instead of the entire vehicle, the police could not search the duffel bag, they could only seize the bag and

hold it while they obtained a search warrant.

This analysis is well conceived but it is no longer an accurate explication of federal constitutional law. In the time since the trial court issued the suppression order, the United States Supreme Court has considered again the "so-called 'automobile exception'" to the warrant requirement of the Fourth Amendment and its application to the search of a closed container in a car. *California v. Acevedo*, —— U.S. ——, 111 S.Ct. 1982, 114 L.Ed.2d 619 (1991). Interpreting *Carroll v. United States*, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1925) as one rule to govern all automobile searches, the court held that the police may search an automobile and the containers within it where they have probable cause to believe contraband or evidence is contained. *Acevedo*, —— U.S. ——, 111 S.Ct. at 1991.

The facts in *Acevedo* are similar to the facts in the case before us. Acevedo was seen leaving an apartment where a shipment of marijuana had recently been delivered, carrying a brown paper bag approximately the same size as one of the marijuana packages previously delivered to the apartment. Acevedo put the bag in the trunk of his car and was pulled over after he drove off. The police then opened the trunk and found marijuana in the bag.

Acevedo's motion to suppress the marijuana was denied and he plead guilty. On appeal, the California Court of Appeals reversed, holding, in reliance on *Chadwick*, that the warrantless search was unlawful because the police had probable cause directed solely at the paper bag, not the entire car. The California Supreme Court denied the state's petition for review. The United States Supreme Court, granting certiorari, eliminated the distinction between probable cause directed at an entire vehicle and probable cause directed solely at a container within a vehicle because "the Fourth Amendment does not compel separate treatment for an automobile search that extends only to a container within the vehicle." *Acevedo*, —— U.S. ——, 111 S.Ct. at 1989.

Under the facts and circumstances of this case, *Acevedo* is controlling. If the police had probable cause to believe the duffel bag in respondent's automobile contained evidence of the robbery, they could search the bag without a warrant. The trial court here did not specifically find the police had probable cause to search the duffel bag and respondent does not concede the issue. The following facts, however, were known to the police at the time of the search: (1) respondent was under investigation as a named suspect in the robbery; (2) respondent was "nervous and agitated" when questioned at his apartment about the robbery and tried to elude the officer in the hallway after the officer left the apartment; (3) ten minutes later respondent was seen by the officer who questioned him, standing by a dumpster a block away with a duffel bag large enough to contain the stolen VCR and camcorder on the ground next to him; and (4) respondent fled to a car with the duffel bag and drove off when the police approached him. On these facts the police had probable cause to believe respondent's duffel bag contained evidence of the video store robbery. Under *Acevedo* then, the warrantless search of the duffel bag in respondent's automobile, where the police had probable cause to believe the bag contained evidence of the robbery, was a valid search under the fourth amendment. Evidence obtained as a result of the duffel bag search was admissible. Therefore evidence obtained in the car trunk search and the warranted apartment search was also admissible. Since respondent's arrest was a lawful probable cause felony arrest, his spontaneous post-arrest statements were admissible as well. The judgment of the court of appeals, which affirmed the order of the trial court suppressing the evidence obtained as a result of the searches of the duffel bag, car trunk and apartment and respondent's post-arrest statements, is reversed.[1] The charge against respondent is

---

1. That portion of the order of the trial court suppressing defendant's confession is unaffected by our decision as this ruling was not challenged on appeal.

reinstated and the case is remanded for further proceedings.

Reversed and remanded.