STATE of Minnesota, Appellant,

v.

Lorrell Devaugn WILLS, Respondent.

No. C2–94–1354.

Court of Appeals of Minnesota.

Dec. 6, 1994.

Review Denied Feb. 14, 1995.

Considered and decided by RANDALL, P.J., and SCHUMACHER and JONES,* JJ.

## OPINION

SCHUMACHER, Judge.

In a pretrial motion, respondent Lorrell Devaugn Wills moved to suppress evidence because, he claimed, the safe searched and seized was outside the scope of the premises search warrant. The district court found that the safe was outside the scope of the search warrant, suppressed the evidence, and dismissed the charges. We reverse.

## FACTS

The facts in this case are undisputed. In March 1994, the police obtained a search warrant for an apartment located in Burnsville. The apartment was rented by Torchelle Holmes, Wills' girlfriend. Although Wills told police that he sometimes lived in the apartment, he was not named in the warrant or the affidavit; the affidavit provided that the police had reason to believe that Holmes had been selling cocaine from her apartment; and the warrant permitted the search of the entire apartment and any storage spaces or areas.

During the search, the police located a combination safe in the closet of the master bedroom. When asked for the combination, Holmes indicated that the safe belonged to Wills and that she did not have the combination. The police then asked Wills for the combination. When he refused, the police told him that they would force it open and possibly damage the safe if he did not provide the combination. Wills then gave them the combination.

The police opened the safe and found approximately 105 grams of a cocaine mixture and some money. The police arrested Wills and drove him to the police station in a police vehicle. During the trip to the station, and despite being told that his comments were not confidential, Wills made several comments regarding his knowledge of the drugs and where they were obtained.

Hubert H. Humphrey, III, Atty. Gen., St. Paul, and James C. Backstrom, Dakota County Atty., Phillip D. Prokopowicz, Stuart E. Shapiro, Asst. County Attys., Hastings, for appellant.

Charles L. Hawkins, Minneapolis, for respondent.

* Retired judge of the district court, serving as judge of the Minnesota Court of Appeals by appointment pursuant to Minn. Const. art. VI, § 10.

In a pretrial motion, Wills moved to suppress evidence regarding the cocaine and his statements, asserting the search and seizure of the safe was outside the scope of the warrant and his statements in the police car flowed from the improperly seized evidence. The district court agreed and suppressed the evidence.

The district court reasoned that under *United States v. Chadwick*, 433 U.S. 1, 97 S.Ct. 2476, 53 L.Ed.2d 538 (1977), the officers were required to obtain a second search warrant before opening, or searching the safe, although the police would have been justified in taking possession of the safe and moving it to the police station. The court suppressed the evidence found in the safe, suppressed Wills' statements about the evidence while in the police car, and dismissed the charges. Wills does not contest the fact that the suppression will have a critical impact on the outcome of the case. The state appeals.

## ISSUE

Did the search and seizure of Wills' safe found in an apartment that was the subject of a valid search warrant exceed the scope of the warrant and require the district court to suppress the evidence and dismiss the charges against Wills?

## ANALYSIS

■ In a pretrial appeal where the facts are not in dispute, this court independently reviews a pretrial order suppressing evidence to determine whether the evidence must be suppressed as a matter of law. *State v. Othoudt*, 482 N.W.2d 218, 221 (Minn.1992).

■ "A search pursuant to a warrant may not exceed the scope of that warrant." *State v. Soua Thao Yang*, 352 N.W.2d 127, 129 (Minn.App.1984) (citing *Mapp v. Ohio*, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961)). "The test for determining whether a search has exceeded the scope of the warrant is one of reasonableness." *Id.* (citing *Illinois v. Gates*, 462 U.S. 213, 235–36, 103 S.Ct. 2317, 2331, 76 L.Ed.2d 527 (1983)). In determining whether the conduct of the officers executing search pursuant to the warrant was reasonable, this court must look at the

totality of the circumstances. *State v. Thisius*, 281 N.W.2d 645, 645–46 (Minn.1978).

■ Here, the state argues that the search and seizure of Wills' safe was within the scope of the valid search warrant issued for the apartment as a whole and that the district court thus erred as a matter of law by suppressing the evidence and by dismissing the charges. We agree and conclude that the search of Wills' safe, which was in an apartment that was the subject of a valid search warrant and which reasonably could have contained the items listed in the search warrant and supporting documents, did not exceed the scope of the valid search warrant.

■ Generally, any container situated within a residence that is the subject of a validly-issued warrant may be searched if it is reasonable to believe that the container could conceal items of the kind portrayed in the warrant. *United States v. Ross*, 456 U.S. 798, 820–21, 102 S.Ct. 2157, 2170–71, 72 L.Ed.2d 572 (1982); *United States v. Gray*, 814 F.2d 49, 51 (1st Cir.1987); *United States v. Eschweiler*, 745 F.2d 435, 439 (7th Cir. 1984), *cert. denied*, 469 U.S. 1214, 105 S.Ct. 1188, 84 L.Ed.2d 334 (1985).

The eighth circuit has adopted the principle that,

"[i]t is axiomatic that if a warrant sufficiently describes the premises to be searched, this will justify a search of personal effects therein belonging to the person occupying the premises if those effects might contain the items described in the warrant."

*United States v. Lucas*, 932 F.2d 1210, 1216 (8th Cir.), *cert. denied*, 502 U.S. 869, 112 S.Ct. 199, 116 L.Ed.2d 159 (1991) (quoting *United States v. Gomez–Soto*, 723 F.2d 649, 654 (9th Cir.), *cert. denied*, 466 U.S. 977, 104 S.Ct. 2360, 80 L.Ed.2d 831 (1984)).

Special Fourth Amendment concerns arise, however, when the persons being searched are not occupants of the premises that is being searched but visitors. *Ybarra v. Illinois*, 444 U.S. 85, 91–92, 100 S.Ct. 338, 342, 62 L.Ed.2d 238 (1979) (visitors are clothed with Fourth and Fourteenth Amendment protections); *Hummel–Jones v. Strope* 25 F.3d 647, 651 (8th Cir.1994); *Gray*, 814 F.2d

at 51; *United States v. Giwa,* 831 F.2d 538, 545 (5th Cir.1987); *United States v. Micheli,* 487 F.2d 429, 432 (1st Cir.1973).

While several jurisdictions have used a test that focuses on the physical possession of the item to be searched, most jurisdictions examine the relationship between the owner of the item and the place searched. *See generally,* 2 Wayne R. LaFave *Search and Seizure* § 4.10(b) (2d ed. 1987 & Supp.1995). Where the courts focus on the physical possession of the item to be searched, the search of personal effects is likely to be upheld where the item is not in the person's immediate possession. *See United States v. Branch,* 545 F.2d 177, 182 (D.C.Cir.1976) (search of shoulder bag on the property not permitted where owner was unknown to police, carried bag suspended from shoulder, and entered apartment while search was being conducted); *United States v. Johnson,* 475 F.2d 977, 979–80 & n. 4 (D.C.Sp.Cir.1973) (search of a purse not in the possession of the owner at the time of search upheld on the basis of a search warrant); *United States v. Teller,* 397 F.2d 494, 496–97 (7th Cir.) (search of a woman's purse executed pursuant to a valid search warrant was upheld where the woman had placed her purse on a bed during the search), *cert. denied,* 393 U.S. 937, 89 S.Ct. 299, 21 L.Ed.2d 273 (1968).

This approach has been criticized, however, because a valid search warrant of a location could "be frustrated by the device of simply picking up the guilty object and holding it in one's hand." *Walker v. United States,* 327 F.2d 597, 600 (D.C.Cir.1963), *cert. denied,* 377 U.S. 956, 84 S.Ct. 1635, 12 L.Ed.2d 500 (1964). The *Micheli* court also criticized the physical possession analysis, noting:

A focus on actual physical possession is too narrow, however, in that it would leave vulnerable many personal effects, such as wallets, purses, cases, or overcoats, which are often set down upon chairs or counters, hung on racks or checked for convenient storage. The Fourth Amendment's basic interest in protecting privacy, and avoiding unreasonable governmental intrusions is hardly furthered by making its applicability hinge upon whether the individual happens to be holding or wearing his personal belongings after he chances into a place where a search is underway. The rudest of governmental intrusions may occur by way of a search of a personal belonging which had been entrusted to a nearby hook or shelf. The practical result of such a rule may be to encourage the government to obtain search warrants for places frequented by suspicious individuals, such as infamous bars, then lie in wait for those individuals to enter and make themselves comfortable.

487 F.2d at 431 (citations omitted).

Rather than focusing on whether a visitor has physical possession of an item, the majority of jurisdictions have examined the relationship between the person whose personal effects are being searched and the place that is the subject of the search. *See United States v. Gonzalez,* 940 F.2d 1413, 1419–20 (11th Cir.1991) (search of locked briefcase in execution of warrant upheld where police knew briefcase belonged not to owner of premises but to brother-in-law because items named in warrant would fit within such a container); *United States v. Young,* 909 F.2d 442, 445 (11th Cir.1990) ("one must consider the relationship between the object, the person and the place being searched"), *cert. denied,* 502 U.S. 825, 112 S.Ct. 90, 116 L.Ed.2d 62 (1992); *United States v. McLaughlin,* 851 F.2d 283, 286–87 (9th Cir. 1988) (upholding the search of co-owner's briefcase at search of business); *Giwa,* 831 F.2d at 543–45 (long-term guest's bag is within scope of warrant for credit card fraud); *Gray,* 814 F.2d at 51 (windbreaker belonging to overnight visitor subject to search for money or records); *People v. Coleman,* 436 Mich. 124, 461 N.W.2d 615, 615 (1990) (warrant for drugs extended to female visitor's purse).

Moreover, several jurisdictions have held that the police are not even required to inquire into the ownership of items found on the premises subject to the search warrant. *See, e.g. United States v. Kralik,* 611 F.2d 343 (10th Cir.1979), *cert. denied,* 445 U.S. 953, 100 S.Ct. 1603, 63 L.Ed.2d 788 (1980); *Carman v. State,* 602 P.2d 1255, 1262 (Alaska 1979); *State v. Nabarro,* 55 Haw. 583, 525

P.2d 573, 576–77 (1974); *State v. Kurtz*, 46 Or.App. 617, 612 P.2d 749, 751 (1980), *rev. denied*, 289 Or. 588 (Or. Sept. 3, 1980); *Commonwealth v. Zock*, 308 Pa.Super. 89, 454 A.2d 35, 38 (1982), *appeal dismissed*, 502 Pa. 164, 465 A.2d 641 (1983). In *Commonwealth v. Reese*, 520 Pa. 29, 549 A.2d 909 (1988), the court noted that

> it would be ineffective and unworkable to require police officer to make the distinction between which articles of clothing and personal property belong to the resident and which belong to the visitor before beginning the search. It would not be reasonable to require police officers executing a warrant to ask individuals located on the premises whether they own various items of personal property, nor would it be reasonable to expect an appropriate response were they required to do so. * * * [V]isitors to the premises could frustrate the efforts of police by placing contraband among their unworn personal effects and by announcing ownership of various articles of clothing or containers in order to place those items beyond the scope of the warrant. We cannot sanction any rule that through fraud and gamesmanship erects barriers to the effective and legitimate execution of search warrants.

*Id.* 549 A.2d at 911.

In this case, the district court suppressed the evidence in issue based on the Supreme Court's decision in *Chadwick*. We decline to apply the *Chadwick* rational proffered by the parties, however, because that decision has been abrogated and overruled by more recent Supreme Court cases. The Court recently has held that the police may open all containers in a reasonable search of an automobile without requiring a search warrant where they have probable cause to believe that the container holds contraband or evidence. *California v. Acevedo*, 500 U.S. 565, 580, 111 S.Ct. 1982, 1991, 114 L.Ed.2d 619 (1991). The Minnesota Supreme Court recognized the abrogation of *Chadwick* in *State v. Search*, 472 N.W.2d 850, 852–53 (Minn. 1991).

Here, the district court specifically noted that the police entered the apartment under a valid search warrant; the district court found that there was "no question that the search warrant was valid." The search warrant provided that the police were entitled to search the premises for cocaine and all other controlled substances and narcotic drugs, scales and drug paraphernalia, records and receipts, writings, papers, money, bank books, keys, firearms, and "[a]ll primary containers used to store, conceal or preserve the above described items."

While Wills argues that his personal effects were beyond the scope of the search warrant, under the general rule regarding the permissible scope of valid premises search warrants, the search and seizure of the safe was proper because the police reasonably could believe that the safe could conceal items of the kind portrayed in the warrant. *See Ross*, 456 U.S. at 820–21, 102 S.Ct. at 2170–71; *Lucas*, 932 F.2d at 1216; *Eschweiler*, 745 F.2d at 439; *Gomez–Soto*, 723 F.2d at 654–55. Indeed, a safe is the very type of place the police could expect to find items included in this search warrant, including controlled substances, the proceeds of the sale of such substances, and firearms.

■ Although Wills may have had a stronger argument if he could have shown that he was merely a visitor to the apartment, Wills admitted that he lived there at least part of the time. Thus, he has a lesser reasonable expectation of privacy in his personal belongings located in the apartment. *See Young*, 909 F.2d at 445; *McLaughlin*, 851 F.2d at 287; *Giwa*, 831 F.2d at 545; *Gray*, 814 F.2d at 51; *Micheli*, 487 F.2d at 431–32.

■ Wills' argument regarding the suppression of the evidence also fails under the disfavored physical possession test. Here, the item searched was not a purse or a canvas bag slung over a person's shoulder, but rather was a safe tucked in a closet in a bedroom. Wills was in a completely different room than the safe, and did not have physical possession of it at the time the search warrant was executed.

Therefore, under either the physical possession analysis or an analysis based on the relationship between the person and the place searched, the search and seizure of

Wills' safe was properly within the scope of the valid premises search warrant. Because the search and seizure of the safe was within the search warrant, Wills' statements to the police officer on the way to the police station also are admissible.

## DECISION

The district court erred by suppressing the evidence and dismissing the charges against Wills because the search and seizure of Wills' combination safe was within the scope of the valid premises search warrant. Because the search and seizure of the safe was proper, the district court also erred by suppressing Wills' statements to the police.

**Reversed.**

RANDALL, Judge (dissenting).

I respectfully dissent. To obtain a reversal of a trial court's suppression ruling in a criminal case, the state must show clearly and unequivocally that the trial court erred in its judgment and that the error will have a critical impact on the outcome of the trial. *State v. Joon Kyu Kim*, 398 N.W.2d 544, 547 (Minn.1987). Here the trial court's ruling will have a critical impact. That is not disputed. The state, however, has not shown clearly and unequivocally that the trial court erred in excluding evidence the police obtained from Wills's safe.

First, I disagree that our review of the pretrial order is de novo. The majority relies on a standard of review for cases where facts are not in dispute. *See State v. Othoudt*, 482 N.W.2d 218, 221 (Minn.1992) (de novo review where facts are not in dispute and the trial court's decision is a question of law). That standard is more appropriate where the parties stipulate to facts, and the facts truly are not in dispute.

Here the facts are not uniformly accepted by the parties, particularly on the key factual issue of whether Wills was merely a visitor to Holmes' apartment or a bona fide part-time occupant. On disputed facts, the trial court is in the best position to weigh relevant factors and evidence. But even under a de novo standard of review, I conclude the trial court came to the proper legal conclusion.

As stated, one factual issue to be resolved is the extent to which Wills resided in Holmes' apartment. The less connection he had to the house, the less probable cause the police would have that he was connected to criminal activity. Guests in others' homes have expectations of privacy with respect to their belongings and thus are protected by the Fourth Amendment. *See United States v. Robertson*, 833 F.2d 777, 783 (9th Cir.1987) (holding search of visitor's backpack illegal); *see generally* 2 Wayne R. LaFave, *Search & Seizure* § 4.10(b) (1987 & Supp.1995). The limitation on the police to search personal effects of visitors comes into effect when the police know or should know that the effects belong to a visitor. *State v. Thomas*, 818 S.W.2d 350, 360 (Tenn.Crim.App.1991), *appeal denied*, (Tenn. Sept. 9, 1991). Absent some indication that the person named in the warrant or the visitor concealed in the container the contraband or some other item sought in the warrant, the police should seize the visitor's container, if seizure was justified, and seek a warrant if the police have probable cause to search the container. *Id.*; LaFave, § 4.10(b) (Supp.1995) at 108.

We only know that Wills stayed at Holmes's apartment occasionally. The record is unclear regarding the extent to which he stayed there. We do not know if he was an irregular visitor, a regular visitor but only in day time hours, if he periodically spent nights there or if he regularly spent nights there.

We do know from the record that the safe belonged to Wills and we do know the police concede that fact. We also know from the record that the police by their questioning became aware that Wills, not Holmes, owned the safe and they came to this knowledge well before it was opened. Further, the police concede that Wills was not named in the warrant, and that they had no prior information when they entered the apartment that Wills had done anything illegal or was in any way a suspect. Both sides agree Holmes and only Holmes was the target of the warrant and the search.

Even after executing the warrant in Holmes' apartment, the police officers still had no probable cause to believe there was

contraband in Wills' safe. In fact, they did not even find any contraband or other evidence of a crime in the Holmes' apartment which was the target. There is no indication, much less any claim, that Wills or Holmes had time to stash contraband in the safe when the police arrived.

The police started with a perfectly valid search warrant allowing them entry into Holmes' apartment. They had a clear and proper avenue open to them when they came into the information that the safe belonged to Wills who just happened to be there at the time. They would have been within their rights in securing the safe and then relaying all the information they had to a trial judge and most likely the same trial judge who authorized the initial warrant for Holmes' apartment. That trial judge could have made an independent decision whether to authorize the searching of the safe. Then we would have an answer through the proper channels.

If the judge decided there was no probable cause as to the safe, the police would have to get more information and try again, or not search it. If the judge found they had enough probable cause, looking at the totality of the facts, they could properly search the safe, and Wills would be left with a pretrial suppression hearing.

Instead the police opted to expand the search on their own rather than proceeding through legal channels. According to Wills the police coerced him into giving them the combination. The police read Wills a *Miranda* warning. They then continued to question him about the safe, *even after Wills asked to speak with an attorney.* Finally, after threatening to open the safe by force, Wills gave the police the combination.

This case is similar to cases where the warrant authorizes the search of "other individuals present" on the premises (but weaker even because the warrant did not mention "other individuals present"). In these cases, there must be "a sufficient nexus between the criminal activity, the place of the activity, and the persons in the place." *State v. Otis,* 487 N.W.2d 928, 930 (Minn.App.1992), *pet. for rev. denied* (Minn. Sept. 30, 1992); *accord State v. Anderson,* 415 N.W.2d 57, 60–61

(Minn.App.1987). Here, the only nexus was that Wills was present when the police executed the warrant. As stated, there was no indication in the warrant that Wills (or anyone else) was suspected of criminal activity, except for Holmes. Once the police arrived, they found no evidence linking Wills to criminal activity until they coerced him into giving them the safe combination. There was no nexus authorizing an arrest or the warrantless search of the safe.

The majority's reliance on *Acevedo* should be limited. The rationale in *Acevedo* is applicable only to automobiles, which being inherently mobile, have always been subject to less stringent requirements than dwellings. *See California v. Acevedo,* 500 U.S. 565, 569–572, 111 S.Ct. 1982, 1985–86, 114 L.Ed.2d 619 (1991).

The officers should have secured the safe and sought a warrant to open the safe. The officers' actions come close to the Fourth Amendment's prohibition of general warrants. I would affirm the trial court's suppression order.