*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2012).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A14-0339**

State of Minnesota,
Appellant,

vs.

Christine Michelle Lacroix,
Respondent

**Filed August 18, 2014
Reversed and remanded
Worke, Judge**

Olmsted County District Court
File No. 55-CR-13-4573

Lori Swanson, Attorney General, St. Paul, Minnesota; and

Mark A. Ostrem, Olmsted County Attorney, Eric Martin Woodford, Assistant County Attorney, Rochester, Minnesota (for appellant)

James McGeeney, Doda & McGeeney, P.A., Rochester, Minnesota (for respondent)

Considered and decided by Worke, Presiding Judge; Schellhas, Judge; and Rodenberg, Judge.

**U N P U B L I S H E D   O P I N I O N**

**WORKE**, Judge

The state argues that the district court erred in concluding that a valid search warrant did not authorize the search of respondent's purse found within the premises to

be searched. Because the district court erred, we reverse and remand for further proceedings.

## D E C I S I O N

Respondent Christine Michelle Lacroix was charged with first-degree controlled substance crime (possession) after police executed a valid search warrant at the house where her boyfriend J.J. lived and found methamphetamine and needles in her purse. The district court granted Lacroix's motion to suppress the evidence on the theory that the warrant did not authorize police to search her belongings.

The state may appeal pretrial orders with critical impact on the case. *State v. Zais*, 805 N.W.2d 32, 35 (Minn. 2011). To satisfy the critical-impact test, the state must show "clearly and unequivocally" that the district court's ruling was erroneous and will have a critical impact on the state's ability to prosecute the case. *Id.* at 36. Critical impact exists when "excluding the evidence significantly reduces the likelihood of a successful prosecution." *Id.* (quotation omitted). The state has met the first prong of the critical-impact test, because there is no likelihood of conviction of possession of drugs without the drugs.

We must next address whether the district court's suppression of the drugs was clearly and unequivocally erroneous. When no facts are in dispute, our review from a pretrial order suppressing evidence is de novo. *State v. Martinez*, 579 N.W.2d 144, 146 (Minn. App. 1998), *review denied* (Minn. July 16, 1998).

"A search pursuant to a warrant may not exceed the scope of that warrant." *State v. Yang*, 352 N.W.2d 127, 129 (Minn. App. 1984). "The test for determining whether a

2

search has exceeded the scope of the warrant is one of reasonableness." *Id.* We consider the totality of the circumstances in evaluating reasonableness of a search. *State v. Thisius*, 281 N.W.2d 645, 645-46 (Minn. 1978).

Generally, a warrant to search a particular place allows police to search any container found on the premises that could contain the types of items listed in the warrant. *State v. Wills*, 524 N.W.2d 507, 509 (Minn. App. 1994), *review denied* (Minn. Feb. 14, 1995). But Fourth-Amendment protections arise when police search a container belonging to a non-occupant visitor. *Id.* We analyze the propriety of such a search under two tests: physical proximity and relationship. The physical-proximity test focuses on whether the person physically possessed the container when police seized it to be searched. *See State v. Wynne*, 552 N.W.2d 218, 222-23 (Minn. 1996) (holding that the search of a purse seized from a woman who arrived at her mother's house when police were executing a search warrant was not encompassed by the scope of the warrant). The relationship test focuses on whether the relationship between the visitor whose personal effects were searched and the place described in the warrant lowers the visitor's privacy interests. *Wills*, 524 N.W.2d at 510.

*Physical-proximity test*

This court has criticized the physical-proximity test as overly formalistic. *Id.* We have noted that "the search of personal effects is likely to be upheld [when] the item is not in the person's immediate possession." *Id.* Indeed, "almost all jurisdictions have upheld searches of . . . personal property belonging to guests . . . if the articles were not in the guests' possession and . . . could reasonably contain items listed in the warrant." *State*

3

*v. Couillard*, 641 N.W.2d 298, 301 (Minn. App. 2002), *review denied* (Minn. May 15, 2002).

Here, the warrant authorized police to search J.J. and the premises at the listed address for drugs, drug paraphernalia, and various items typically involved in drug sales. Prior to the search, police learned that Lacroix was J.J.'s "on-again-off-again" girlfriend. On the morning of the search, police found Lacroix in bed in the basement of the house. The homeowner, who rented the basement to J.J., stated that Lacroix was a regular visitor who "had spent a few nights there." Lacroix told officers that when she stayed at the house, she "slept with [J.J.] in the bedroom in the basement." Lacroix told officers that her purse was in the basement, and admitted that it contained needles that she used to shoot methamphetamine.

Lacroix did not physically possess the purse when she was found in the basement or when she revealed its whereabouts to police. In a room where drugs and drug paraphernalia were found, the purse was precisely the kind of closed container that might contain additional contraband of the sort described in the warrant.

This search was different than the search in *Wynne*, because in that case the owner of the purse was not at the premises when police began the search, and police seized the purse directly from her when she arrived. 552 N.W.2d at 219. The privacy expectations of someone who has her purse seized from her immediate possession after she brought it to a search already in progress are greater than those of a visitor who has spent the night at the premises to be searched and discarded a purse from her physical possession in a drug-filled room. *See Wills*, 524 N.W.2d at 511 (holding that a person who lives at a

4

residence "at least part of the time" has a "lesser reasonable expectation of privacy" than a visitor). Because Lacroix did not have the purse in her immediate physical possession at the time she was detained, the search warrant gave police the right to search the purse.

*Relationship test*

Under this test, we analyze the relationship between the visitor and the place searched. *Id.* at 510. Transient visitors retain a full expectation of privacy, but usual occupants of a building, such as part-time residents, lose their privacy interests in their belongings because police can expect to find those items during a search of the premises. *See id.* (citing *United States v. Micheli*, 487 F.2d 429, 431-32 (1st Cir. 1973) (holding that the key distinction between an occupant and a visitor is that it can reasonably be expected that some of an occupant's personal belongings will be at the place to be searched)).

As a part-time resident of the premises searched, Lacroix's privacy interest in her personal items was diminished because police could expect to find them in a search of the premises. Because her purse, in a drug-filled room, was the kind of container that might conceal contraband listed in the warrant, it was reasonably related to the purpose of their search and did not intrude on Lacroix's Fourth-Amendment rights. Therefore, the district court erred by suppressing the drugs.

**Reversed and remanded.**