*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A16-0330**

State of Minnesota,
Respondent,

vs.

Tara Renaye Molnau,
Appellant.

**Filed December 19, 2016
Affirmed
Jesson, Judge**

McLeod County District Court
File No. 43-CR-15-597

Lori Swanson, Attorney General, St. Paul, Minnesota; and

Michael K. Junge, McLeod County Attorney, Daniel R. Provencher, Assistant County Attorney, Glencoe, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, St. Paul, Minnesota; and

Ted C. Koshiol, Special Assistant Public Defender, Minneapolis, Minnesota (for appellant)

        Considered and decided by Larkin, Presiding Judge; Hooten, Judge; and Jesson, Judge.

**UNPUBLISHED OPINION**

**JESSON**, Judge

Appellant challenges her conviction of third-degree possession of a controlled substance in violation of Minn. Stat. § 152.023, subd. 2(a)(1) (2014). She argues that the district court erred by declining to suppress evidence of methamphetamine found in her purse by police during the search of a home of another person. We affirm.

**FACTS**

Jeff Morris, a licensed peace officer employed by the Renville County Sheriff's Office and assigned to the Brown-Lyon-Redwood-Renville ("BLR") Drug Task Force, applied for a daytime warrant on April 17, 2015, to search the Hutchinson home of Nicholas John Zobel. Among other things, the application signed by Morris stated that in the month of April, police had received a tip that Zobel was involved in "illicit drug sales" and "drug trafficking in the McL[eo]d County area." The warrant application further stated that during Morris's participation in a warranted search at the home of A.M.S. on April 14, 2015, an occupant of that home, J.P.K., told police that early that morning J.P.K. had driven A.M.S. to Zobel's home, and A.M.S. "purchased approximately one half ounce of methamphetamine from" Zobel. According to Morris, J.P.K. also informed police that A.M.S. had purchased methamphetamine in the past at Zobel's home and that Zobel was A.M.S.'s supplier. J.P.K. positively identified both Zobel and Zobel's address. The search-warrant application also stated that Zobel had second-degree and fifth-degree controlled-substance convictions in 2006.

On this information, the district court issued a daytime warrant that allowed police to search Zobel's home and person for methamphetamine or other controlled substances, and to search for other items associated with selling drugs, such as weapons.

Morris and eight or nine officers from the Hutchinson Police Department executed the warrant at Zobel's home at 3:08 p.m. on April 22, 2015. When they knocked on the back door and announced their presence, police heard a commotion inside the home, Zobel "came running out the front door" and then immediately ran back inside and was apprehended by police, who followed him. Once inside the home, police found appellant Tara Renaye Molnau sitting on a living room couch.

During the search of the home, police came upon a purse sitting on the kitchen table. Morris searched the purse and found that it contained Molnau's identification and what was later identified as 4.002 grams of methamphetamine, as well as some empty baggies. Before the search, Morris did not know to whom the purse belonged. When asked his reason for believing after he searched the purse that the methamphetamine in it belonged to Molnau, Morris responded, "It was a purse, she's a female, there was an ID card with her name on it, a Blue Cross Blue Shield insurance card with her name, and then a prescription pill bottle with her name on it as well." When asked why he did not ask for Molnau's permission to search the purse, Morris stated, "I had a search warrant for narcotics." Police also found eight grams of methamphetamine at another location in the home, as well as other drug paraphernalia. Molnau and Zobel were both arrested.

Molnau was charged with third-degree possession of a controlled substance in violation of Minn. Stat. § 152.023, subd. 2(a)(1). Molnau moved to suppress the criminal

complaint "on the ground[] that there [was] insufficient showing of probable cause for law enforcement to search" her purse. Following a suppression hearing at which Morris testified, the district court denied the motion, determining that the search of the purse was lawful because Molnau "was present in the residence on a couch in the living room at the time the search warrant was executed," the "purse [was] located in the kitchen area of the house," and the purse was not in Molnau's possession when it was discovered by law enforcement. In the attached memorandum of law, the district court reasoned:

> [Molnau's] purse was not on her person at the time the search warrant was being executed. The officers executing the search warrant could reasonably assume that the items listed in the search warrant could be concealed in a purse. Even had the officers known that the purse belonged to [Molnau], it is reasonable that drugs could have been concealed in the purse between the time that the purse was last in [Molnau's] possession and the time that the search warrant was executed.

Molnau entered a plea of not guilty under Minn. R. Crim. P. 26.01, subd. 4, in order to preserve the pretrial suppression issue for appellate review. Molnau stipulated to the state's evidence in accordance with the rule, and the district court found Molnau guilty of the charged offense. The district court stayed imposition of sentence and placed Molnau on probation, which, among other conditions, required her to serve 45 days in jail. Molnau appealed.

4

**DECISION**

"When reviewing pretrial orders on motions to suppress evidence, an appellate court may review the facts independently to determine, as a matter of law, whether the district court erred in suppressing, or not suppressing, the evidence." *State v. Ruoho*, 685 N.W.2d 451, 458 (Minn. App. 2004), *review denied* (Minn. Nov. 16, 2004). "The district court's factual findings will not be reversed . . . unless clearly erroneous or contrary to law." *Id.*

The United States and Minnesota constitutions protect persons from unreasonable searches and seizures. U.S. Const. Amend. IV; Minn. Const. Art. I, § 10. A warrant may issue to search a particular place when there is probable cause to believe that "a crime has been committed and that evidence of the crime will be found at the place to be searched." *Ruoho*, 685 N.W.2d at 456. "Generally, any container situated within a residence that is the subject of a validly-issued warrant may be searched if it is reasonable to believe that the container could conceal items of the kind portrayed in the warrant." *State v. Wills*, 524 N.W.2d 507, 509 (Minn. App. 1994), *review denied* (Minn. Feb. 14, 1995).

But during the execution of a valid warrant to search a home, a visitor to the home may have a separate privacy interest that makes the search of the visitor's personal belongings unconstitutional without independent probable cause to search them. *See, e.g., Ybarra v. Illinois*, 444 U.S. 85, 91, 100 S. Ct. 338, 342 (1979) (holding unconstitutional the search of a bar patron who happened to be located in a bar during execution of a warrant that authorized the search of the premises and the bartender for controlled substances). The probable-cause requirement applies to the search of home visitors because probable cause protects the "legitimate expectations of privacy of persons, not places," and this

5

expectation is not extinguished when probable cause exists to search a place where a person outside the purview of the search warrant happens to be. *Id*. (quotation omitted); *see State v. Wynne*, 552 N.W.2d 218, 220 (Minn. 1996) ("A search warrant authorizing the search of a particular building or premises does not give the officers the right to search all persons who may be found in it." (quotation omitted)).

Typically, a shoulder purse found in the possession of a person "is so closely associated with the person that it is identified with and included within the concept of one's person." *Wynne*, 552 N.W.2d at 220 (quotation omitted). But consistent with other jurisdictions, Minnesota recognizes that a home visitor's privacy interests do not include personal belongings, such as "jackets, purses, bags, and other articles of personal property" if the belongings are "not in the [visitors'] possession" during the execution of a valid search warrant, and the belongings "could reasonably contain items listed in the warrant." *State v. Couillard*, 641 N.W.2d 298, 301 (Minn. App. 2002), *review denied* (Minn. May 15, 2002).

In *Couillard*, police entered a home after "obtain[ing] a search warrant for the residence, individuals, and vehicles present at the residence." *Id*. at 299. Before issuance of the search warrant, the defendant was one of three persons who had been detained by police after running out of a residence in which police had observed evidence suggestive of controlled substance sales, but before police had obtained a warrant to search the residence. *Id*. This court ruled that the defendant did not have standing to challenge the validity of the search warrant but ruled that he could challenge the search of his backpack,

6

which was found inside the residence on the living room floor. *Id*. Upholding the search of the backpack, this court said,

> [The defendant's] backpack was not in his possession at the time of the search. The officers had reason to suspect that guests had come to the residence for the purpose of smoking marijuana. The police found the backpack near the couch in the living room where a tray of marijuana was openly displayed on the coffee table. The police could reasonably suspect that the backpack contained marijuana or related items described in the warrant.

*Id*. at 301.

In analyzing home visitors' Fourth Amendment privacy interests in their personal belongings, this court has recognized and applied both the physical-proximity test and the relationship test. *See, e.g., Wills*, 524 N.W.2d at 509-10. The physical-proximity test focuses on "the physical possession of the item to be searched." *Id*. at 510. This test typically includes within constitutional protection an item in the personal possession of a visitor to a place that is subject to a valid search warrant. *Id*. But the physical-proximity test does not uphold the privacy interest of the visitor if "the item is not in the person's immediate possession." *Id*. The "relationship test" "examine[s] the relationship between the person whose personal effects are being searched and the place that is the subject of the search." *Id*. Under this test, "any container situated within a residence that is the subject of a validly-issued warrant may be searched if it is reasonable to believe that the container could conceal items of the kind portrayed in the warrant." *Id*. at 509.

*Couillard* is the Minnesota case most factually on point, and, as in *Couillard*, application of either test supports upholding the constitutionality of the search of Molnau's

7

purse in this case. Molnau was sitting in the living room at the time of execution of the search warrant, and her purse was located on a table in the kitchen. The purse was not in Molnau's immediate possession, and, as in *Couillard*, it was located in another room with readily apparent illegal items. In the kitchen, along with the purse, the officers also discovered a black bag on the kitchen table that contained two baggies of suspected methamphetamine and a "glass methamphetamine pipe," and in the freezer and on top of the refrigerator they found suspected marijuana or hashish wax, as well as tin foil and baggies. Because the purse was not in Molnau's immediate possession, it was subject to the search parameters set forth in the warrant and could properly be searched for evidence of controlled substances or related items.[1] Application of the relationship test leads to the same result. In considering the relationship between "'the object, the person and the place being searched,'" the purse belonged to Molnau, a visitor, but the purse could be searched because it was reasonable to believe that the purse could include evidence of controlled substances and related items, which was the purpose of the search. *See Wills*, 524 N.W.2d at 510 (quoting *United States v. Young*, 909 F.2d 442, 445 (11th Cir. 1990)).

Finally, Molnau argues that police should have been on notice that the purse belonged to Molnau, a visitor, because purses typically belong to females and Molnau was the only female in the home at the time of the search. But the stipulated record includes

---

[1] Molnau urges us to reject the physical proximity test as too narrow. But we are "an error-correcting court, and we apply the best law available to us." *State v. Kelley*, 832 N.W.2d 447, 456 (Minn. App. 2013), *aff'd*, 855 N.W.2d 269 (Minn. 2014). Because the Minnesota Supreme Court has not rejected this test, we decline to do so.

8

evidence that Morris, who applied for the search warrant, had information that another woman lived in the home with Zobel.

For all of these reasons, the district court did not err by upholding the constitutionality of the search of Molnau's purse.

**Affirmed**.